THOMAS D. LOCKMAN, Appellant, v. D. M. ANDERSON AND MAUD C. ANDERSON.

**Options:** TIME OF PAYMENT: *Essence of contract.* Under an agreement to sell to L. on condition that L. desires to buy by March 1st, otherwise the contract to be void after that date it is of the essence of the contract not only that the option be exercised, but also that the money be paid or tendered, within the specified time.

WAIVER OF TENDER. There is no waiver of a tender of the purchase price under an option, where on the last day for exercising it, the seller contends he is not bound at all, and there is a postponement till a later day of further conversation on the subject of such claim and that subject alone.

*Appeal from Monroe District Court.*—HON. ROBERT SLOAN, Judge.

THURSDAY, APRIL 10, 1902.

ACTION for specific performance of contract to convey real property. Defense that the contract was procured by fraud, and also that plaintiff had failed to comply with the terms of the contract. Decree dismissing plaintiff's petition, from which he appeals.—*Affirmed.*

*T. B. Perry* for appellant.

*D. M. Anderson, pro se,* and *F. D. Everett* for appellees.

McCLAIN, J.—The written contract under which plaintiff claims was executed February 18, 1900, and was in the following words: "For value received, I hereby agree to sell to Tom D. Lockman my two-story brick building, on the north side of the square, Albia, Iowa, known as the 'Koontz Building,' for the consideration of $5,500; this being upon the condition that the said Tom D. Lockman desires to buy the same by the first of March, 1900. If he should, I agree to make a deed and assign leases of the property to him for said amount; but, if he should not desire to buy, this contract to be null and void after that date. I agree to stand expense of deed to him and to a third party, and to give good title. D. M. Anderson." The defendant Maud C. Anderson is the wife of D. M. Anderson, and is made a party for that reason only. For the purposes of this opinion, D. M. Anderson will be treated as the sole defendant.

The defendant pleads that the contract was procured by the fraudulent representation on the part of plaintiff that he was acting for one Mrs. Duncan, who did not desire her name to appear in the transaction, and that, if the option to purchase was exercised, the conveyance was to be made to plaintiff, and he was to convey to Mrs. Duncan; and the last sentence of the contract is relied on as supporting this contention. The theory of defendant is that he had a right to select his purchaser (*Ellsworth v. Randall,* 78 Iowa, 141), and that the written agreement above set out was procured by plaintiff with the fraudulent purpose of enabling plaintiff to enforce the contract in his own right, instead of for the benefit of Mrs. Duncan. According to the testimony of defendant, his purpose was to give to Mrs. Duncan any profit or advantage that might result from the carrying out of the contract, whereas plaintiff sought to take advantage of it by way of effecting a resale of the property to Mrs. Duncan at a profit, and defendant refused to carry out the contract for this reason. It is undoubtedly true that, if defendant contracted with plaintiff as agent of Mrs. Duncan, he would not be bound to make a sale of the property for the benefit of another principal (*Ellsworth v. Randall, supra*); but the difficulty with this position is that the contract does not purport to be with plaintiff as the agent of any one, but, by its plain terms, indicates that plaintiff was the principal, and parol evidence is certainly not admissible to contradict the contract in this respect, unless it is sufficient to show fraud. On the issue as to fraud the evidence is conflicting, and we agree with the lower court in holding that the defense is not established by a preponderance of the evidence.

With reference to the question whether plaintiff complied with the conditions of the contract, the evidence in his behalf shows that on the 28th of February he indicated to defendant his purpose of availing himself of the option to take the property, and advised defendant that he would con-

clude the transaction on the following day; that on the 1st of March plaintiff had some conversation with defendant with reference to postponing the final consumation of the transaction until the 3d of March; and that on the 3d of March plaintiff tendered to defendant the agreed price for the property, and defendant refused to execute a deed. The theory of plaintiff as to this matter is that the time of payment of the purchase price named in the contract to convey was not of the essence of the contract, and that a subsequent tender within a reasonable time, without any revocation by the other party on account of delay in making payment, was sufficient to entitle the proposed grantee to enforce a conveyance of the property under the contract. But it must be borne in mind that in general the terms of a contract with reference to the time of performance are as much of the essence of the contract as any other of its conditions, and that the equitable doctrine that the vendee shall not be defeated on account of delay in paying the purchase price is an exception. 2 Beach, Contract, section 616. Mr. Pomeroy states the doctrine thus: "It is well settled that where the parties have so stipulated as to make the time of payment of the essence of the contract, within the view of equity as well as of the law, a court of equity cannot relieve a vendee who has made default. With respect to this rule there is no doubt. The only difficulty is in determining when time has thus been made essential. It is also equally certain that, when the contract is made to depend upon a condition precedent (in other words, when no right shall vest until certain acts have been done, as, for example, until the vendee has paid certain sums at certain specified times), then, also, a court of equity will not relieve the vendee against the forfeiture incurred by a breach of such condition precedent. But when, on the other hand, the stipulation concerning payment is only a condition subsequent, a court of equity has power to relieve the defaulting vendee from the forfeiture caused by his breach of this condition, upon his paying

the amount due; with interest, because the clause of for-
feiture may be regarded as simply a security for the pay-
ment. It is therefore held in a great number of cases that
the forfeiture provided for by such a clause, on the failure
of the purchaser to fulfill at the proper time, will be disre-
garded and set aside by a court of equity, unless such failure
is intentional or willful. This conclusion is in plain accord-
ance with the general doctrine of equity in relation to relief
against forefeitures, but it cannot be regarded as a universal
rule. Under exactly these circumstances many American
decisions have treated such a clause as rendering the stipu-
lated time of payment essential, and as, therefore, binding
according to its letter, and have refused to give any relief."
1 Pomeroy, Equity Jurisprudence, section 455. With ref-
erence to this matter the same author says (3 Pomeroy,
Equity Jurisprudence, section 1408): "Time may be es-
sential. It is so whenever the intention of the parties is
clear that the performance [of the terms of the contract]
shall be accomplished exactly at the stipulated day. The
intention must then govern. A delay cannot be excused.
If performance at the time is essential, any default will
defeat the right to specific performance." It is clear that,
under the contract which we have before us, the exercise
of the option contemplated was a condition precedent, and
therefore the time within which the option could be exercised
was of the essence of the contract. But it is contended
on behalf of plaintiff that the option was exercised on the
28th of February, by the notice to defendant that plaintiff
would take the property, and that thereupon the contract
became one simply for the purchase of the property at an
agreed price, and that the failure of plaintiff to pay on
the exact day named in the contract would not defeat plain-
tiff's right to a specific performance. In answer to this ar-
gument it is enough to say that the contract does not so
provide. It is true, nothing is said, in connection with the
exercise of the option of purchase, as to when payment is to

be made; but, in the absence of any express provision, it must certainly be implied that the option to be exercised was not simply the making of an election to take the property, but the payment of the purchase price. If this is not so, then there is no provision as to the time when the purchase price is to be paid; and, rather than presume that the parties intended that the time of payment should be left wholly indefinite and undetermined after plaintiff had notified defendant of his election to take the property, we think that we are bound to hold that the intention was that the purchase price was to be paid by the day named.

It is further contended that the conversations between plaintiff and defendant on February 28th and March 1st amounted to an agreement to extend the time within which the purchase price should be paid. We have already set out the substance of plaintiff's evidence on this point. Defendant, however, in his testimony, denies the correctness of plaintiff's testimony, and gives to the conversations referred to a quite different meaning. It appears that defendant was at that time contending that he was not bound to convey to plaintiff at all, and that the postponement of further conversation on the subject until the 3d of March had reference only to this matter; leaving it open to him to still contend on the 3d day of March, as he did, that he was not bound by the contract. No doubt, if there had been a distinct waiver on the part of defendant of a formal tender of the money on the 1st of March until the parties should further discuss the question of whether there was any obligation whatever on the part of defendant to make a conveyance to plaintiff, defendant would be estopped from now taking advantage of the failure to make a tender of the purchase price on March 1st; but we think that it is not established by a preponderance of the evidence that there was any such waiver, or any agreement extending the time of payment. There is no testimony, aside from

that of the parties themselves, as to what these conversations were except that of one witness who heard some conversation on the 1st of March; but what he says does not substantially corroborate plaintiff's version of that conversation, rather than the version contended for by defendant. The best that can be said, therefore, is that the evidence as to a new contract or an estoppel is in equilibrium, and, the plaintiff having the burden of proof as to this matter, he must fail.—AFFIRMED.