INDIANA & ARKANSAS LUMBER & MANUFACTURING COMPANY

*v.* PHARR.

Opinion delivered May 6, 1907.

1. SALE OF LAND—HOW DISTINGUISHED FROM OPTION.—A written contract whereby the owner of land acknowledged receipt of a sum as "earnest money and part payment for certain land," which was described, mentioned the price and terms of sale, and stipulated that "the entire deal is to be closed within sixty days," is an option to buy, and not a contract to sell. (Page 581.)

2. SAME—BREACH OF WARRANTY—RETURN OF EARNEST MONEY.—Where a vendor received earnest money and warranted the title, there was an implied obligation on his part to return the earnest money if the title proved imperfect. (Page 582.)

3. OPTION—TIME.—Where, by the terms of a contract for an option, the exercise thereof is limited to a specified and definite time, it is necessary that the option be exercised before the expiration of such time; otherwise the right is lost. (Page 582.)

4. SAME—ACCEPTANCE.—The fact that the taker of an option on land wrote to the owner before the option expired that he would be ready to "close the option" on the land the day after expiration of the option did not constitute an acceptance of the option within the agreed time. (Page 583.)

Appeal from Lee Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit is by appellant against appellees to have the title to certain lands in Lee County vested in appellant under the following contract:

"Memphis, Tenn., May 29, 1905.

"Received of Indiana & Arkansas Lumber & Manufacturing Company the sum of one hundred dollars as earnest money and part payment for the following described property, a warranty deed to be furnished as soon as title is examined, which is guarantied perfect:

"All section 31, T. 3 N., R. 4 E., S. ½ 30, T. 3 N., R. 4 E., E. ½ 26. T. 3 N., R. 3 E., W. ½ and S. E. ¼ section 25, T. 3 N., R. 3 E., N. half section 36, E. of Bayou, all of section 32.

"Price on above is $7.00 per acre, on which there is a credit of $500.00, per agreement with S. G. Helm.

"The entire deal is to be closed within 60 days. Terms one-third cash, one-third six months, one-third twelve months, bearing six per cent. interest, satisfactorily secured.

(Signed)          "H. N. Pharr."

The complaint alleged that under this contract appellees agreed to sell the appellant the lands described therein; that appellant had the lands surveyed as was understood between the parties, and had offered to perform its part of the contract, and had demanded a deed in accordance with the same; that appellant was ready, and had been at all times, to carry out the contract on its part, and tendered with its complaint the purchase money as provided by terms of the contract; that appellee Harry N. Pharr is the owner in fee of the lands, and appellee Stella Pharr has dower; that, while appellee Harry N. Pharr alone signed the contract, yet he was authorized by appellee Stella Pharr to dispose of the lands absolutely.

Appellee Mrs. Stella Pharr answered separately that she is the owner of the dower interest, but denies that she had authorized or empowered Harry Pharr to dispose of the lands, and claims that she knew nothing of the execution of the contract.

Harry N. Pharr answered that he had executed the contract, but denied that he agreed to sell the lands described, ex-

cept in the limited and conditional way described in the contract; that by said contract for the consideration of $100 he gave the plaintiff the right to buy said lands within 60 days with the express understanding that the entire transaction should be closed up within 60 days; that at no time within 60 days did the plaintiff tender to the defendant one-third of the purchase money in cash and satisfactory security for the two deferred payments; that under the contract the plaintiff's right to purchase expired on the 28th of July, 1905; that the plaintiff addressed a letter to the defendant, written on the 26th of July, but which was first mailed by the plaintiff to its head office at St. Louis, and from there it was mailed to this defendant on the night of July 27th; the defendant was out of his office during the 29th of July, and consequently did not see the letter until the 30th; that in said letter the plaintiff stated it would be ready to close the option on July 29th, a day subsequent to the expiration of the option.

Appellant introduced the following letters:

"Marianna, Ark., July 26, 1905.

"Mr. H. N. Pharr,

"Memphis, Tenn.

"Dear Sir:

"We will be ready on Saturday, July 29, '05, to close the option on your lands in Lee County, Arkansas, the deeds to the lands to be approved by our attorney, H. F. Roleson. Mr. Roleson has had some correspondence with you regarding the Schwartz matter, as well as a minor child living in Washington who has some small interest. These, we presume, you will have in proper shape and send to Mr. Roleson for his approval.

"Yours truly,

"Ind. & Ark. Lmbr. & Mfg. Co.,

"Per H. P. Fulton, Treasurer."

This letter, as shown by registry receipt, was received at St. Louis July 27, 1905, for registration to H. N. Pharr, Memphis, Tenn. This letter was forwarded to Memphis, and was received there as shown by receipt signed "H. N. Pharr by R. B. Barton, July 29, 1905."

Another letter as follows:

"Marianna, Ark., July 28, 1905.

"H. N. Pharr,

"Memphis, Tenn.

"Dear Harry:

"I am in receipt of the instrument executed by Wm. Schwartz. It is all right. Mr. Fulton advised me over the 'phone that the certificate is now in, together with their plat of the land, and they are ready to close the deal whenever you are. The only thing to be reserved now is the small amount necessary to protect them against any possible claim of Miss Foreman. They may not care anything about that, but consider it protected by your warranty. Advise me or Mr. Fulton a couple of days in advance when you are coming over.

"Yours truly,

"H. F. Roleson."

Appellant shows that the letter signed by H. F. Roleson was written for it.

Appellant's witness, M. P. Fulton, who was its manager and treasurer, among other things, testified: "I wrote a letter on July 26th, put in evidence in Mr. Luehrmann's deposition, and sent it to Mr. Luehrmann at St. Louis for his inspection, and to be forwarded to Mr. Pharr. In a letter dated the 11th of July I wrote Mr. Pharr as follows:

"'We now expect to be through with our survey on Friday of this week. We would like to have the other matters which Mr. Roleson wrote you about fixed up so we can close the deal with you in the next ten or fifteen days. Kindly let us hear from you.'

"After writing the letter dated July 26th, I had a conversation with Mr. Pharr on the 29th at Marianna. About three or four o'clock he came to the 'phone, and I told him we were ready to take those lands. He asked me how I was going to pay for them, and I said we would pay cash. He said it would have to rest for a few days. I told him we were ready to pay whenever he was ready. That evening about six o'clock I came up town and drove around and got Mr. Pharr, and took

him down to our office, and got out the blue prints of the survey that had been made. We got in the buggy, and in coming on back I said, 'As we are giving you all cash, you should give us two per cent. discount.' I said it was customary in business matters. He asked how I expected to pay for this land, and I said by check or draft on St. Louis. He then remarked that his mother was down in Texas; that she had a certain interest. That was the first I knew of his mother having any interest. He said he was going to Memphis and make out the deed and send it to her and have it back to me by the 7th or 8th of August. After supper I walked a portion of the way to the depot with him, and told him to get the deed ready, and mail it here to the Lee County Bank, give us a short time for our attorney to examine it, and we were ready to pay the money for the property. He made no objections in the world to that arrangement at the time He claimed no violation of the contract, but merely said he would send the deed to Texas and get his mother to sign it. On the 29th of July I said to him that we were ready to pay the money and to comply with our contract. He said it could be fixed up as soon as the deed could go to Texas. He never said anything about expecting or requiring us to make a tender of actual money.

"The deed from Wm. Schwartz and Son was received by Mr. Roleson on the 28th of July. It would have been impossible for us to go to Memphis and make a tender of performance of an actual tender on that date, as the train going to Memphis does not leave Marianna until 7:30 o'clock in the evening, and there was no way to get to Memphis until the morning of the 29th.

Mr. Luehrmann, the president of the company, testified to the contract, and exhibited the letters above, and identified same, and also produced various letters received from appellee H. N. Pharr after the 29th of July, which it is unnecessary to set out. Reference will be made to these in the opinion. He testified to the payment of the $100 mentioned in the contract, and further testified as follows:

"Our company was ready on the 26th of July to close this deal. We were absolutely able financially to do so, and were prepared to pay the money. We asked Mr. Pharr to make the

deed. He made no objection on account of the fact that we did not tender him the cash. He never made any such suggestion prior to the 28th of July. We never tendered Mr. Pharr during the life of the option any actual cash nor any notes that were secured. I told him to make his deed, and we would pay him the cash. I told him that in the letter of July 26. That is the only time I told him that, prior to the expiration of the contract time. At the time Mr. Pharr signed the contract I asked him if it was necessary to get his mother's signature. He informed me that it was not, that he was the sole owner of the property. I am offering now to pay in court the full amount of purchase price regardless of her dower. Mr. Helm, who is mentioned in connection with title, is in our employ, and we agreed to account to him for $500, which he was to have."

One of the letters of Pharr adduced by appellant substantially sets forth the facts from H. N. Pharr's viewpoint, as his testimony also tended to prove. That letter is as follows:

"Memphis, Tenn., Sept. 8, 1905.

"Mr. G. E. W. Luehrmann,
      "148 Carroll St.,
         "St. Louis, Mo.

"Dear Sir:

"Your letter of the 4th inst. received. I will be unable to meet you in Marianna or St. Louis, as you suggest. My position in this land matter is as follows: Mr. S. G. Helm had an option on this land until May 28, 1905. I was not anxious to sell the land then, and do not care to sell it at all now. On May 29. 1905, you came to my office in Memphis, with Helm's option and for $100 earnest money I extended the option 60 days, in the name of the Ind. & Ark. Lmbr. & Mfg. Co., of which you are the president. Helm was to be paid his commission, 'the entire deal to be closed in 60 days.' The sixty (60) days, not counting May 29th, expired at midnight on July 28, 1905. Several letters were written and received during this time. An examination and survey was desired and made, and some papers and quitclaims were secured by me, to clear and perfect the title, according to the opinion of Mr. Roleson, your attorney. On July 12th I received a letter, dated July 11th, saying you

would be ready to close the deal 'within the next ten or fifteen days.' On July 28th, Mr. Roleson, at Marianna, wrote me that the title was all right, and that you were ready to close the deal. On July 26th, Mr. Fulton, at Marianna, wrote me and said: 'We will be ready on Saturday, July 29, 1905, to close the option on your lands in Lee County, Arkansas.'

"This letter was mailed, first to you at St. Louis for your approval, I suppose, and there on July 27 at the night station, registered to me. It was received at Memphis postoffice on July 28th, P. M. Now, I was in my office at Memphis on July 28th, and had been for several days previous thereto. Your option to "entirely close the deal" expired on July 28th at midnight. On the morning of July 29th I left for Marianna, before the delivery of the morning mail, and I had not received the registered letter or the letter from Mr. Roleson, on the 28th. I received both of these letters upon my return to the office on July 30th; Mr. R. B. Barton, Secretary of the Levee Board, having receipted for the registered letter in my name, by him. While at Marianna, Mr. Fulton and Mr. Roleson both stated that you were ready to close the deal, but no actual tender of the money or purchase price was made, and your option had expired at that time.

"I therefore take the position that you did not protect your option, and say that you did not close the deal in 60 days from May 29, 1905, which was the date the option was given. Therefore the deal is off. My mother, Mrs. Stella Scott Pharr, was not previously consulted in regard to any of these transactions. She has an interest in the land, and she refused to dispose of the same, so that I will be unable to convey title. In view of this latter fact, I am willing, in order to settle the matter fairly, to refund to you the $100 earnest money, which you put up, although at the time the option was given you knew that my mother was interested, and should have secured her signature to the option.

> "Yours very truly,
> "H. N. Pharr."

The court found in favor of appellees, and dismissed the complaint for want of equity.

*H. F. Roleson*, for appellant.

If appellee wanted the actual currency tendered, the law required him to say so. 45 Ark. 37. In equity a vendee is never required to make such a tender as would be necessary to sustain a plea of tender in an action at law. It is sufficient if he is ready, willing and able to pay, and offers to do so at the time agreed. 47 Atl. 725. A technical tender is not necessary to the maintenance of an action in equity for specific performance. 112 N. Y. 191; 19 N. E. 414; 42 N. Y. S. 435; 28 Ark. 180; 28 *Id*. 27. Courts of equity exercise the right to decree specific performance of agreements in respect to the purchase on sale of real property in their discretion. 20 How. (15 L. Ed. 1005); 14 Pet. 174; 2 Story, Eq. Jur. § 771-6; Adams, Eq. ch. 27, 263. Time is not material unless the delay is great or the other party to the contract has been injured thereby. 42 How. Pr. 56; 49 N. Y. 326; 3 Paige, 466; 6 Wheat. 528; 14 Pet. 172; 1 Des. 398. And even where time is made material the failure of one of the parties to perform a condition within the time limited will not in every case defeat his right to specific performance. 134 U. S. 68; 7 Ves. Jr. 265-279; 71 Fed. 705; 57 N. Y. 351.

The fact that a party may not have an action at law is a reason for a decree for specific performance. Fry, Spec. Per. § § 709, 710, 712, 719; Willard, Eq. Jur. (Potter's Ed.), 392, 294; 49 N. Y. 330; 112 *Id*. 195; 155 *Id*. 466. One can not take advantage of his own laches. Provisions for forfeitures are made for the benefit of the adverse party and not for the one who fails to perform. 61 Pac. 926; 35 S. E. 505; 60 N. E. 211.

*N. W. Norton*, for appellees.

A vendee can not proceed against his vendor in a suit for specific performance without actual performance on his part, or a tender and refusal. 1 Pet. 464; 10 Wall, 359. When the relation of vendor and vendee exists, time is not ordinarily of the essence of the contract; but when time is given in which to create that relation, he who has the privilege must act within the time, or it will not be created. 52 Ark. 65; 11 S. W. 1019; 37 Ark. 308. If the grantor of the option had been obligated to perfect the title, and had failed, it would still be neces-

sary for the grantee thereof to tender performance on his part. 16 Sup. Ct. Rep. 808.

WOOD, J., (after stating the facts.)  1.  The Supreme Court of Georgia in *Black* v. *Maddox,* 104 Ga. 157, defines an option as follows: "The obligation by which one binds himself to sell, and makes it discretionary with the other party to buy, which is simply a contract by which the owner of property agrees with another person that he shall have a right to buy the property at a fixed price within a certain time." We approved this definition in the recent case of *Bonanza Mining & Smelting Company* v. *Ware,* 78 Ark. 306. See *Ide* v. *Leiser,* 24 Am. St. Rep. 17; 21 Am. & Eng. Enc. Law (2 Ed.), 924.

The distinction between an option and a contract for sale is made clear in *Bonanza Mining & Smelting Co.* v. *Ware,* 78 Ark. 306. *supra,* where we quoted from the Supreme Court of Pennsylvania as follows: "An option is an unaccepted offer. It states the terms and conditions on which the owner is willing to sell his land, if the holder elects to accept them within the time limited. If the holder does so elect, he must give notice to the other party, and the accepted offer thereupon becomes a valid and binding contract. If an acceptance is not made within the time fixed, the owner is no longer bound by his offer, and the option is at an end. A contract of sale fixes definitely the relative rights and obligations of both parties at the time of its execution. The offer and acceptance are concurrent, since the minds of the contracting parties meet in the terms of the agreement." *McMillan* v. *Philadelphia Company,* 159 Pa. St. 142.

In the light of this definition and the distinction between an option to buy and a contract of sale, it is plain that the contract under consideration is an option. It is unilateral, binding only the appellee, H. N. Pharr, to make warranty deed to the lands named in the contract upon the terms therein mentioned when the appellant, the holder of the option, within the time designated therein accepted those terms, leaving it discretionary with the appellant for the full period named therein to determine whether it would accept and close the deal. The most difficult question for us has been to determine whether the contract in question was one of sale or only an option. There does not seem to be any obligation on the part of appellant to take.

the land if the title is found to be perfect. As we construe the contract, it rather gives to appellee the privilege of examining the title, and the privilege of closing the "entire deal within sixty days" upon the terms mentioned, if it finds the title satisfactory. Appellee H. N. Pharr alone signed the contract, and he only is bound to do anything, upon the conditions named, while the appellant is left free to close the deal or not as it sees proper in sixty days. This seems to us to be the proper construction of the contract. Such is the construction given similar contracts in *Kelsey* v. *Crowther*, 162 U. S. 404, 16 Sup. Ct. Rep. 808, and *Hollman* v. *Conlon*, 45 S. W. (Mo.), 275.

True, the contracts in the above cases had an express provision for the return of the money paid for the option in case of adverse report upon the title. But that duty is implied here from the fact that the $100 were paid and were received as "earnest money and part payment for the property, both parties doubtless contemplating that the title would be found perfect, and that the deal would be consummated within the time specified. Appellee H. N. Pharr had warranted that the title was perfect, and this implied an obligation on his part to return the $100 if the title was found imperfect.

2. Construing the contract as an option, the effect that should be given the element of time specified therein is correctly stated in 21 Am. & Eng. Enc. Law, 931, as follows: "Where by the terms of a contract for an option the exercise thereof is limited to a specified and definite time, it is necessary that the option be exercised before the expiration of such time, otherwise the right is gone. Attempts to exercise the option after the expiration of the time limited, on the ground that in equity time is not of the essence of a contract, have been uniformly met with the answer that where the parties have seen fit to regard time as an essential element, the courts must likewise so regard it. However true in regard to executed contracts in general, the principle has generally been regarded as having no application to an offer to make a contract which by express agreement is to remain open for a specified time. There is, moreover, a strong inclination on the part of the courts to view any delay with great strictness, on the ground, that the party seeking to enforce performance was not bound, while the

other party was bound." The doctrine of the text is well sup-
ported by the many citations in the notes from English and
American courts. (See these and the case of *Litz* v. *Goosling,*
21 L. R. A. 127, where the subject of option contracts is elabo-
rately discussed in notes and many authorities are collated.)

We have examined the many cases cited in the excellent
brief of counsel for appellant to support its contention that
"equity does not treat time as of the essence of the contract,"
and we find that they are cases in which there was mutuality of
undertaking and obligation, or else contracts of sale, where the
language of the contract itself, or the facts adduced, showed
that time was not of the essence. Of course, these authorities
are not applicable to unilateral contracts that expressly fix a
period beyond which the maker will not be bound, as in the case
at bar.

3. But appellant contends that, if time was of the essence
of the contract, its letters of July 26th and 28th were an ac-
ceptance of the offer of appellee H. N. Pharr and bound him to
specific performance. The letters were not an acceptance.
They informed Harry N. Pharr that appellant would "be ready
to close the option," not that appellant was ready then and ac-
cepted the terms of the offer by Pharr. Their recitals show
that the closing of the deal on appellant's part was to be left
open until at least one day after the expiration of the option,
and not to be completed then unless the deeds were approved by
its attorney. There was nothing in these letters to bind appel-
lant to close even on the 29th. But that was too late. The
"entire deal" under the option contract was "to be closed in 60
days," not to be kept open after that time for appellant to say
whether it would close it or not. There was absolutely no
obligation on appellee H. N. Pharr to do anything under the
contract until appellant accepted his offer within the time.
Then his obligation was to make warranty deed. Appellant
can not excuse its failure to get ready within the time by say-
ing that Pharr was not ready and would not have been. *Kelsey*
v. *Crowther,* 162 U. S. 404. Appellee Pharr was not in default
until appellant was ready within the time to pay over the money
and do the other things required by the option. The delay of
one day was fatal. The option contract, the moment the sixty

days expired, was dead. Its obligations were gone.

4. We see nothing therefore in the letters of H. N. Pharr, or in his conduct subsequent to the expiration of the option, that would revive its obligations as to him. There was no element of waiver or estoppel in the case, and we are of the opinion that his defense to the suit was perfect.

The judgment is affirmed.