In the Matter of the Petition of HILLTOP DEVELOPMENT, a partnership for certain relief in connection with certificate of Title No. 199618

HILLTOP DEVELOPMENT, a partnership consisting of Robert N. Roningen and Will Selbak, Appellant,

v.

MILLER HILL MANOR COMPANY, a partnership consisting of Norman Hewitt and John Jackson, Respondent.

No. C8–82–1580.

Supreme Court of Minnesota.

Jan. 13, 1984.

Robert J. Karon, A. Blake MacDonald of MacDonald, Munger & Downs, Robert N. Roningen, Duluth, for appellant.

Daniel H. Mundt and Theodore L. Hall of Mundt & Hall, Duluth, for respondent.

SCOTT, Justice.

This contract dispute is before us for the second time. In a written contract dated January 12, 1980, Miller Hill Manor Company (Miller Hill) agreed to sell certain real estate to Hilltop Development (Hilltop). The agreement gave buyer Hilltop 9½ months to decide whether to cancel the deal or go forward to closing. Miller Hill soon reneged on the contract, claiming it had been defrauded. Hilltop sued for a judicial determination as to the validity of the contract, and the trial court held that it was valid. The court then extended the contract's final closing date, giving Hilltop six weeks thereafter to make its election. After this new date had passed and negotiations between the parties failed, Miller Hill appealed this ruling. We affirmed. Hilltop then moved the lower court for refor-mation. The lower court held, in an order dated October 14, 1982, that the option to purchase had expired by its terms. Hilltop now appeals. We reverse and remand for an order directing the parties to conclude this transaction in accordance with the terms of the option agreement dated January 12, 1980.

Respondent Miller Hill agreed to sell Hilltop a 90-unit apartment complex in the Duluth area. Hilltop agreed to purchase the property, but desired more time to consider the transaction before it became final. The parties therefore agreed that Hilltop could cancel the contract any time before November 1, 1980. The agreement was to continue in full force and effect if Hilltop failed to cancel by that date. Hilltop paid $1,000 "for the privilege of said option." The parties contemplated that Hilltop would convert the complex into condominiums. To assist in this effort, Miller Hill agreed to promptly provide various floor plans, blueprints, and diagrams of the building. Hilltop was to obtain the consent of any lienholders to assume all encumbrances on the property. The contract also called upon Hilltop to furnish a mortgage and examine the title. Hilltop was to inform Miller Hill of any title defects so that the seller could correct them. If Hilltop purchased the property before June 11, 1980, it was to pay 22% of the seller's equity in the property upon closing. If it went forward after that date, Hilltop was to tender 20% of the equity. The contract also provided that "[a]t such time as [buyer Hilltop] determines it will continue with this agreement, or not later than November 2, 1980, this transaction shall be closed." The parties made time of the essence.

Miller Hill initially complied with the contract by furnishing the plans and blueprints. It then apparently suffered a change of heart and reneged by letter of February 20, 1980. Miller Hill claimed it had relied to its detriment on some of Hilltop's figures concerning the tax consequences of the sale. Miller Hill told the buying partners to stay off the property, and retrieved the blueprints.

Hilltop then filed the agreement as an adverse claim on the property and sued for a determination of the contract's validity. On October 14, 1980, the district court ruled there had been no fraud. The court declared that Hilltop held a valid option to purchase the property, and extended the closing deadline from November 1 to December 15, 1980.

Five days before the court's new deadline, Hilltop announced its intention to purchase the property in a letter dated December 10. Hilltop stated that it was "hereby exercising its option to purchase Miller Hill Manor," and that it anticipated closing the sale on its original terms as soon as the paper work could be completed for a bank loan. Hilltop felt that "a number of details" remained unsettled and invited the selling partners to meet "in the next few days" to work these out.

On December 31, Miller Hill wrote to the buyer and offered new contract terms that would make Miller Hill a partner of the buyer after the sale. This letter stated that if the new offer was not acceptable, Miller Hill "expect[ed] to close on this matter at the present time and you will deliver to us * * * 20% of approximately $1,380,-000." If Hilltop did not either pay its money or agree to the new offer by January 7, 1981, Miller Hill stated it would "regard you in default on your requirement to make payment at the time of closing."

Hilltop replied on January 2, 1981, and elected to close in accordance with the original agreement. It asked Miller Hill to deliver title and other necessary documents to the bank, and made it clear that the bank was "ready to proceed." Miller Hill did not deliver the deed or meet with the Hilltop partners. Instead, on January 9, it appealed the October 14, 1980, district court decision upholding the option contract. This court summarily affirmed that decision on December 16, 1981.

Hilltop then instituted the present action, moving the lower court for an extension of the closing date and the payment schedule. All of the dates in the agreement, as well as those in the court's original order, had come and gone. This time the district court denied the buyer's motion. The court held that the option had expired by its terms on or before January 7, 1981. This was the final date for closing set by Miller Hill in its letter of December 31. The contract required closing at the time Hilltop exercised the option. The lower court therefore found that Hilltop's attempts to exercise by written notice had been ineffective because Hilltop "did not close" the sale by January 7, 1981. This holding apparently sustained Miller Hill's contention that Hilltop had to tender payment of the purchase price in order to exercise the option. This conclusion is the subject of the present dispute.

The clear issue presented to this court is whether the buyer effectively exercised its option to purchase when it gave unambiguous notice of its willingness and ability to perform within the option period, or whether it was required to tender payment in order to exercise this option.

■■■ In finding tender by Hilltop a condition precedent to effective exercise of the option, the lower court in effect required Hilltop to perform this contract in order to accept it. The court thus read the option agreement as an offer of a unilateral contract. *See generally* Wormser, The True Conception of Unilateral Contracts, 26 Yale L.J. 136 (1916). In this and other areas of contract law, this interpretation is a disfavored one. *See* 3A Corbin, *Contracts* § 635 (1960). Courts generally do not require a buyer to tender payment in order to exercise its option unless the parties clearly express that intent. *See, e.g., Ford v. Lord,* 99 Idaho 580, 586 P.2d 270 (1978); *Foard v. Snider,* 205 Md. 435, 109 A.2d 101 (1954); *see also* Annot., 71 A.L.R.3d 1201, 1219–21 (1976), and cases cited therein. If the contract does not require payment prior to exercise, the buyer's unambiguous notice of intent to purchase usually constitutes an effective acceptance of the option. *See International Speedways, Inc. v. Aman,* 1 N.C.App. 227, 161 S.E.2d 50 (1968). This is true even where the contract calls for payment "immediately" upon

exercise of the option, as does the disputed agreement here. *See Welsh v. Jakstas,* 401 Ill. 288, 82 N.E.2d 53 (1948). In such cases the buyer's notice of intent is an acceptance of the option by a promise to perform, and a bilateral contract of sale then arises between the parties. *See City of Shakopee v. Clark,* 295 N.W.2d 495, 497 (Minn.1980); *Shaughnessy v. Eidsmo,* 222 Minn. 141, 146, 23 N.W.2d 362, 366 (1946). It seems clear that if the contract had simply required the parties to close the sale immediately upon exercise of the option, Hilltop could have accepted this offer by giving clear notice of its intent to perform. An executory sale contract would then have been created, and this bilateral agreement would require both parties to proceed to closing.

■■■ A potentially complicating factor here, however, is the language of the agreement fixing a final date for closing. The contract stated that closing could occur no later than November 2, 1980. The parties also made time of the essence of the contract. They clearly intended that either the option would expire or the entire deal would be consummated by November 2, depending on Hilltop's decision. Where an option contract requires a buyer to "purchase" or "buy" property within a specified time, courts generally require the buyer to tender payment in order to accept the offer. The buyer cannot effectively exercise such an option merely by giving notice of its intent to purchase. *See, e.g., Edwards Lumber & Land Co. v. Smith,* 191 N.C. 619, 132 S.E. 593 (1926); *Lockman v. Anderson,* 116 Iowa 236, 89 N.W. 1072 (1902); *cf. Antoniou v. Girga,* 15 Ill.App.3d 916, 305 N.E.2d 565 (1973), *aff'd,* 60 Ill.2d 27, 322 N.E.2d 798 (1975). Here, however, the contract did not require Hilltop to "purchase" the property by November 2. It required both parties to "close" the transaction by that date. We must therefore determine what this clause required Hilltop to do in order to effectively exercise its option.

A closely analogous case is *Indiana & Arkansas Lumber & Manufacturing Co.*
*v. Pharr,* 82 Ark. 573, 102 S.W. 686 (1907). There, the seller granted an option to purchase which stated that "the entire deal is to be closed within 60 days." Within this period the buyer informed the seller by letter that it would "close the option" on the sixty-first day if the deeds were approved by its attorney. The option period ran without further action by the buyer. The Arkansas court refused to award specific performance on these facts. The court held that this language required the buyer both to give notice and to stand ready to perform the contract within the option period. The seller was not in default until the buyer did so. *Id.* at 583, 102 S.W. at 690. The buyer's letters had not effectively exercised the option. Its letters failed to show that it was either ready or willing to perform within the time allotted to it.

The rule suggested by this case is that where an option requires the parties to close the transaction upon exercise by the buyer, or in any event by a specified date, the option lapses unless the buyer gives notice of its intent to perform and stands ready to do so within the option period. This rule embodies the intent of the parties in this case. The contract language did not require Hilltop to tender payment in order to exercise its option. If Miller Hill had intended to require tender, it could have expressed that intent in the agreement, which was drafted by its own attorney. We conclude that the parties did not intend to allow Miller Hill to avoid its contract by simply refusing to show up at closing. We also find it unnecessary to decide whether Hilltop's letter of December 10, in which it "anticipated" closing as soon as the "paper work" was finished, constituted an effective acceptance. Miller Hill extended the option period to January 7, 1981. On January 2, Hilltop expressed its desire to purchase in unambiguous terms, requested the seller's deed, and made it clear that its bank was "ready to proceed." We believe this letter expressed both an intent and an ability to perform, and therefore constituted an effective exercise of the option. The contract required no more than this.

348

When Hilltop exercised this option according to its terms, an executory contract of sale arose between the parties. *See City of Shakopee,* 295 N.W.2d at 497; *Shaughnessy,* 222 Minn. at 146, 23 N.W.2d at 366. If Miller Hill then felt that Hilltop was in default, it was required to comply with the statutory procedures governing the cancellation of such contracts. Minn. Stat. § 559.21, subd. 2 (1982), provides that "[w]hen default is made in the conditions of any contract for the conveyance of real estate or any interest therein executed on or after May 1, 1980," the seller must serve notice of default upon the buyer. The seller must inform the buyer that the contract will terminate 30 days after notice if, as here, the buyer has paid less than 10% of the purchase price. Because Miller Hill admittedly failed to comply with these procedures, the parties remain bound by an executory contract of sale, and Miller Hill is presently in default of its obligation to sell. We therefore reverse the district court and remand this case for an order directing the parties to conclude this transaction in accordance with the terms of the option agreement dated January 12, 1980.

Reversed and remanded.