JOHN W. HINKELL, ET AL.

V.

C. DOUGLAS ADAMS, ET AL.

Record No. 870448

April 21, 1989

Present: All the Justices

*Douglas L. Fleming, Jr. (William B. Hanes; Hanes, Sevila, Saunders & McCahill, P.C.,* on briefs), for appellants.
*Kevin J. Kelley* for appellees.

WHITING, J., delivered the opinion of the Court.

This is a suit for specific performance brought by sellers of real estate against allegedly defaulting purchasers. On February 22, 1984, John W. Hinkell and Beverly M. Hinkell, his wife (the Hinkells), contracted with C. Douglas Adams and Fern L. Adams, his wife (the Adamses), to purchase about 30 acres of the Adamses' 92.9907-acre tract in Loudoun County. The contract provided a closing date of September 30, 1984, "or as [soon] thereafter as financing can be arranged."

The Hinkells unsuccessfully sought financing of the estimated purchase price of $75,000,[1] and for the erection of a modular home at an estimated cost of $145,000. Although the Hinkells sold their residence in Nokesville on July 30, 1984, for $47,000 cash and a $30,000 promissory note, on September 4, 1984, they notified the Adamses that they would be unable to settle on the property. The Adamses responded by insisting upon performance at the settlement date. During the second week in September, the Hinkells contracted to buy a house and land in Rappahannock County, on which they closed on September 27, 1984.

On October 5, 1984, the Adamses brought this suit against the Hinkells for specific performance of the sales contract. Unknown to the Hinkells, at a date not shown in the evidence, but some time after the suit was instituted, the Adamses filed a subdivision plat of their entire 92.9907-acre tract with the appropriate officials in Loudoun County. Their recordation of the subdivision plat subjected the Hinkells' proposed purchase to: (1) two easements of passage to other properties; (2) two building setback lines trisecting the property; and (3) new and inconsistent lot lines encom-

---

[1] The purchase price was to be based on a rate of $2,500 per acre, with an estimated acreage of 30 acres. The exact purchase price was to be determined after the Hinkells had the property surveyed. The survey disclosed that the tract consisted of 28.6245 acres, making the purchase price $71,561.25.

passing parts of at least four lots shown on the plat. The plat was approved by the county on November 27, 1984, and recorded on December 4, 1984.

On December 9, 1985, on the Adamses' motion, the trial court entered a decree requiring the Hinkells to specifically perform the contract on or before January 17, 1986, or to show cause on that date why they should not be held in contempt for failure to do so. The Hinkells did not perform as required, and appeared before the court on January 17, 1986.

At that hearing, the court found that: (1) the Hinkells should not be held in contempt because they were financially unable to purchase the property on the closing date;[2] and (2) the Adamses' recordation of the subdivision plat prevented them from conveying the property as described in the sales contract. The court ordered the Adamses to vacate the subdivision plat to the extent necessary to permit them to convey the property as described, and directed that thereafter the property be sold at the Hinkells' risk. The Adamses and the Hinkells agreed on April 4, 1986, that the Adamses would not vacate the plat, but would sell the property without any adjustment in the purchase price, leaving the only issue to be resolved "the damages, if any, owing Adams by Hinkell" because of the Hinkells' alleged failure to purchase the property.

On September 6, 1986, the court found that the Adamses were entitled to damages for such failure in the form of interest from October 1, 1984, the day after the contract closing date, until July 9, 1986, when the Adamses sold the entire 92.9907-acre tract to a third party.

The Hinkells allege that the trial court erred in finding that: (1) there was a meeting of the minds such that they were bound to the contract of sale; (2) specific performance could lie despite the fact that the Adamses subdivided the property in a fashion preventing them from conveying the property as called for in the agreement; and (3) they should pay interest to the Adamses. We need not decide the first or third issue because our decision on the second issue disposes of all matters in controversy in this appeal.

When the Adamses appeared before the court on December 9, 1985, and asked for specific performance, they were not able to

---

[2] The Adamses assign no cross-error to this ruling.

perform the contract because their recordation of the subdivision plat substantially affected the title which they had contracted to convey to the Hinkells. The Adamses argue that they could have vacated the subdivision plat at any time, without county approval. Both § 1242.05 of the "Subdivision Regulations of Loudoun County, Virginia," in effect until December 1, 1984, and § 1241.08 of the "Loudoun County Land Subdivision and Development Ordinance,"[3] as well as Code § 15.1-481, required county approval to vacate the plat and eliminate the title defects. Accordingly, we reject this contention.

We have held in a number of cases that a party who seeks specific performance "must show that he has been able, ready, prompt, eager and willing to perform the contract on his part. He must not have remained quiet or held himself aloof so as to enforce or abandon the contract as events might prove advantageous." *Mundy* v. *Hesson*, 215 Va. 386, 391, 209 S.E.2d 917, 920 (1974); *Cranford* v. *Hubbard*, 208 Va. 689, 695, 160 S.E.2d 760, 764 (1968); *Reutt* v. *Jordan*, 207 Va. 869, 873, 153 S.E.2d 197, 200 (1967). In our opinion, the Adamses' recordation of the subdivision plat was an inconsistent act indicating the Adamses' unequivocal intent to "abandon the contract as events might prove advantageous." Therefore, after the recordation, the Adamses were no longer entitled to specific performance and, for that reason, could not recover damages from the Hinkells for their alleged earlier failure to perform.

[2] Although the trial court had held that the Hinkells had defaulted, the Adamses, by their subsequent change of position, waived their right to rely on that holding. At a time when the Adamses were still demanding specific performance, but were unable to perform because of the recordation of the subdivision plat, they had no right to specific performance and, therefore, no right to damages for the Hinkells' failure to perform. We conclude, therefore, that there were no damages owed by the Hinkells to the Adamses.

Accordingly, we will reverse the judgment of the trial court and enter final judgment for the Hinkells.

*Reversed and final judgment.*

---

[3] We judicially notice these ordinances pursuant to the provisions of Code § 8.01-386(A).