# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Bonnie Stevens

v.

Nho T. Miller

March 28, 2007

Case No. CL05-700

BY JUDGE MARK S. DAVIS

This matter is before the Court on cross-motions for summary judgment. The case involves a claim for specific performance arising out of a dispute over an option to purchase contained within a lease agreement for a residential property. The factual background, discussion of the issues, and conclusions are set forth below.

*Factual Background*

On June 24, 2002, plaintiff Bonnie Stevens and defendant Nho T. Miller entered into a lease on a piece of residential property in the City of Portsmouth. The lease, a form document with blank spaces filled in, was to run from July 1, 2002, to June 30, 2003. It included a paragraph entitled, "Purchase Option," which read in its totality:

> This purchase option is only valid July 2003 until June 2004. The purchase price will be the higher of market value or a 5% increase (annual) in the value of the property which would set the value at

$58,800. After 1 year, $100.00 of the monthly rent will be applied to the purchase (maximum of $2,400).

On May 5, 2004, plaintiff gave defendant notice in the form of a hand-written letter that she was "going to exercise [her] option to purchase the property . . . as our agreement stated in the contract." Plaintiff's notice further indicated that she had made arrangements with a lending institution to purchase the property, but that she required a contract of sale to obtain the loan.

Plaintiff proceeded to obtain an appraisal of the property to determine its fair market value, and on June 24, 2004, presented a sales contract to defendant listing a sales price of $63,000 and $2,400 in credit from past rental payments. In a section of the contract labeled, "Other Conditions," the sales contract specified that the buyer (plaintiff) would obtain a home inspection at buyer's expense, and that the seller (defendant) was to remove a tree in the back yard and replace a part of the fence, at her expense.

Defendant refused to sign the contract, and on July 1, 2004, also refused to accept further rental payments from the plaintiff. It appears, however, that the parties subsequently agreed to continued payment of rent pending further developments in their dispute over the option to purchase. Plaintiff initiated this action for specific performance on August 15, 2005. From the Court's review of the briefs and stipulations made at oral argument, the foregoing facts appear to be undisputed.

## Discussion

The standard for granting summary judgment in Virginia is well settled. Summary judgment upon all or any part of a claim may be granted to a party entitled to such judgment when no genuine issue of material fact remains in dispute and the moving party is entitled to judgment as a matter of law. Va. Sup. Ct. Rule 3:18; *Andrews v. Ring*, 266 Va. 311, 318, 585 S.E.2d 780, 783 (2003).

## Claims of the Parties

Plaintiff contends that she is entitled to specific performance because she timely exercised the option to purchase, carried out all of her obligations in good faith, and would have obtained financing and closed on the property but for the refusal of the defendant to cooperate and perform her burdens under the contract of sale. Specifically, plaintiff argues that, once she notified

defendant of her intent to exercise the option, the option agreement gave way to an executory bilateral contract for the sale of the property and that defendant breached that contract by refusing to sign the contract tendered by plaintiff on June 24, 2004. That breach, plaintiff claims, prevented plaintiff from obtaining financing, without which closing on the property was impossible.

Defendant, by contrast, argues that plaintiff failed to timely exercise her option to purchase. Specifically, defendant claims that the words "until June 2004" unambiguously indicate that the option period during which plaintiff could exercise her right to purchase ended on May 31, 2004. Defendant argues that plaintiff's tender of a sales contract on June 24, 2004, was outside the term of the option period and that defendant was therefore under no obligation to sign it. Further, defendant argues that plaintiff was obligated to tender the full purchase price by the end of the purchase period, that defendant had no obligation to help plaintiff obtain financing by signing a sales contract, and that the sales contract tendered by plaintiff constituted a counter-offer rather than an acceptance of the option contract because it contained additional terms not listed in the original option agreement. In the alternative, defendant argues that the option agreement is unenforceable as indefinite for not specifying a time by which the purchase price needed to be tendered and the sale closed. Finally, defendant argues that plaintiff impermissibly delayed filing of her suit and that the doctrine of laches precludes the relief sought.

*Analysis*

1. *Exercising the Option Contract*

In contract law, an option is usually understood as merely "a continuing offer to sell, irrevocable during the option period." *Hart v. Hart*, 35 Va. App. 221, 235, 544 S.E.2d 366, 373 (2001). It is a unilateral contract in the sense that, for valid consideration, it binds the offeror but does not bind the offeree. Upon exercise of the option, however, the option agreement is converted into an executory and bilateral contract with mutuality of obligation and remedy. *Ryland Group v. Wills*, 229 Va. 459, 463, 331 S.E.2d 399, 402-03 (1985). The acceptance of an option agreement "must be absolute and unconditional, in accordance with the offer made, and without modification or the imposition of new terms in order to constitute a valid exercise of the option. . . ." *Hart*, 35 Va. App. at 236, 544 S.E.2d at 373 (quoting Am. Jur. 2d, *Vendor and Purchaser*, § 56 (2000)).

Of primary concern here is if, and when, plaintiff exercised her option to purchase contained within the lease. Defendant maintains that, in the present case, where there is no specific provision in the contract for a manner of exercising the option and no date given by which closing must occur, once the option is exercised, plaintiff could only exercise her option by tendering the full purchase price within the option period. Controlling Virginia precedent appears to dictate a contrary conclusion.

"Where an option by its express terms requires that the payment of the purchase money or part thereof accompany the optionee's election to exercise the option, the making or tender of the payment specified . . . is a condition precedent to the formation of the contract." 77 Am. Jur. 2d, *Vendor and Purchaser*, § 53 (1997); *Hart*, 35 Va. App. at 236, 544 S.E.2d at 373. However, the general rule – referred to by some courts as the Williston rule – is that in the absence of an unequivocal requirement for tender within the contract, courts should interpret "the option as conditioned upon the giving of a promise to pay the price for the land, that is, as calling for the formation of a bilateral contract rather than for tender of the actual performance which would be required for acceptance in a unilateral contract." *Hart*, 35 Va. App. at 236-37, 544 S.E.2d at 373-74 (quoting 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts*, § 5:18 (4th ed. 1990) (emphasis added)).

This general rule appears to have been adopted long ago by Virginia courts.[1] For example, in *Carter v. Hook*, 116 Va. 812, 817, 83 S.E.2d 386, 388 (1914), the Supreme Court of Virginia quoted approvingly from *Pomeroy on Specific Performance*, § 169, in which it was stated: "[Option contracts] are, in reality, condition-agreements. Upon the happening of the condition – that is, upon *making the request, giving the assent, or declaring the option* – they become absolute, and in many instances mutual in their obligation." (emphasis added). Similarly, the Virginia Supreme Court's insistence in *Ryland Group* that exercising an option creates an executory and bilateral contract, with mutuality of obligation and remedy, only makes sense if the option can be accepted and exercised with something short of tender of the full purchase price. *See Ryland Group*, 229 Va. at 463, 331 S.E.2d at 402-03.

---

[1] The Williston rule controls in the majority of jurisdictions that this Court has canvassed. *See Loose v. Brubacher*, 219 Kan. 727, 549 P.2d 991 (1976); *Hilltop Development v. Miller Hill Manor Co*, 342 N.W.2d 344 (Minnesota 1984); *International Speedways, Inc. v. Aman*, 1 N.C. App. 227, 161 S.E.2d 50 (1968). *But see Ingram v. Kasey's Associates*, 340 S.C. 98, 531 S.E.2d 287 (2000) (finding an exception to the general rule for options contained in a lease agreement).

As one court in another jurisdiction noted, requiring acceptance through tender of the full purchase price unreasonably asks the offeree "to perform [the] contract in order to accept it." *Hilltop Development v. Miller Hill Manor Co.*, 342 N.W.2d 344, 346 (Minnesota 1984). The Restatement (Second) of Contracts, § 32 (1981), takes the same position, stating that "in case of doubt, an offer is interpreted as inviting the offeree to accept either by promising to perform what the offer requests, or by rendering the performance, *as the offeree chooses.*" *Hart*, 35 Va. App. at 237, 544 S.E.2d at 374 (emphasis added).

The *Hart* case cited above directly addresses these issues. In *Hart*, the Circuit Court of Roanoke entered a final divorce decree granting the wife an option to purchase a parcel of land that she and her husband occupied as tenants in common. 35 Va. App. at 234-35, 544 S.E.2d at 372-73. The wife's attorney sent a letter to the husband within the option period indicating her intention to exercise the option. When husband did not respond, wife sent a second letter, enclosing a check for less than the agreed upon purchase price. *Id.* As here, the husband argued that wife had to complete the purchase within the option period, that she failed to accept the option, and that her non-conforming tender constituted a counter-offer. The court rejected the Husband's arguments. In pertinent part, it stated:

> The language of the option determines the method of required acceptance. Although the parties can require tender of payment as the method of exercising the option, unless the parties specify such a requirement, tender is not necessary in order to exercise the option.
>
> Where an option contract does not provide for payment of the purchase price at the time of, or coincident with, an optionee's exercise or attempted exercise of the option, or where such contract is silent as to the time of payment, courts have usually adhered to the view, sometimes referred to as the general rule, that, in such circumstances, payment is not a necessary requisite to exercise, but is instead simply one of the acts required of the optionee in performance of his part of the bilateral contract of purchase and sale which was formed when he *communicated to the optionor his election or intention to exercise the option and thereby accepted the optionee's* [sic] *offer. . . .*
>
> Where an agreement granting an option to purchase a particular tract of land requires that it be exercised on or prior to a designated date, but is silent as to the time at which payment of

the stipulated purchase price is to be made, the option may be exercised by the optionee without making or tendering payment at the time of, or coincident with, such exercise.

*Id.* at 236-37, 544 S.E.2d at 373-74 (emphasis added). On the subject of the wife's failure to tender the full purchase price, the court continued:

Any conduct that occurred following receipt of the first letter pertained to performance, rather than formation, of the contract to sell. Therefore, wife's letter dated July 3, 1997, whereby she attempted to pay less than the full amount for Parcel A, related to performance of her obligation under the contract and *did not constitute a failure to properly exercise the option.*

*Id.* at 238-39, 544 S.E.2d at 374-75 (emphasis added).

This Court finds *Hart* dispositive of the issues presented here. Accordingly, the Court finds that plaintiff exercised her option to purchase on May 5, 2004, when she notified defendant by letter that she intended to purchase the property according to the terms of the option agreement. That letter constituted an acceptance of defendant's offer, without modification or condition. The option agreement itself required no more. There are no express terms in the option agreement indicating tender of purchase money as the required method of acceptance/exercise, and the Court will not infer any such terms.

As a result of finding that the option was properly exercised in May, the Court need not decide whether the phrase in the option agreement, "until June 2004" was intended to include or exclude June from the option period. The plaintiff exercised the option timely, regardless of whether the word "until" is given an exclusive or inclusive interpretation.[2]

Once plaintiff exercised the option, she had a reasonable time in which to tender the full purchase price. The language of the option agreement did not unambiguously require closing to occur before the option period had ended or

---

[2] The Court notes, however, that many courts and commentators have described the word "until" as inherently ambiguous. *See* 52 Am. Jur., *Time*, p. 350, § 25 (while literally intended to exclude the date which follows, "popular use is quite as likely to give it an inclusive as an exclusive sense."). *See also Atwater & Co. v. Bowers*, 74 F.3d 253, 254 (2d Cir. 1934) ("[t]he word 'until' is of ambiguous meaning and may be construed either to include or to exclude the date to which it refers, depending upon the intention of the parties using it as gathered from the circumstances and context of its use.")

by any specific date. As the Supreme Court of Virginia has noted, "settled contract law implies a reasonable time limitation for performance of conditions in contracts for the sale of land where no time for performance is fixed by the contract itself." *Ryland Group*, 229 Va. at 465, 331 S.E.2d at 403; *see also Huselton v. Roop*, 215 Va. 127, 128-29, 207 S.E.2d 826, 827 (1974) (purchaser allowed reasonable time to obtain financing).

After plaintiff exercised the option and a bilateral contract for the sale of the property was formed, the defendant had an implied obligation to cooperate with plaintiff and to refrain from frustrating the purpose of the contract. *4031 Limited Partnership v. Board of Supervisors of Fairfax County*, 21 Va. Cir. 384, 385 (Fairfax County 1990) (one party to a contract cannot act or refuse to act so as to frustrate the performance by the other party); *see also Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 461 (5th Cir. 2003) (*citing Elliott v. Lewis*, Case No. 05-91-01216-CV, 1994 Tex. App. LEXIS 3338, *25 (Tex. App. Dec. 16, 1994), for the proposition that in a similar context "it is incumbent upon appellant to exercise good faith in carrying out the terms of the contract so as to comply with the intention of the parties and to accomplish the purpose for which it was executed"). This implied obligation of cooperation applies particularly forcefully in contracts for the sale of real estate, as obtaining financing is often dependent upon sellers indicating their willingness to proceed with a sale, e.g., by signing a contract conforming to the terms of the offer.

The non-conforming contract, containing additional terms and presented to defendant by plaintiff on June 24, 2004, did not represent a counter-offer, nor did it invalidate the plaintiff's prior exercise of the option contract. Rather, as in *Hart*, the defendant remained bound to sell the property to plaintiff, and plaintiff was obligated to buy the property according to the terms of the contract. Therefore, plaintiff's attempt to add additional terms "related to performance of her obligation under the contract and did not constitute a failure to properly exercise the option." *Hart*, 35 Va. App. at 238-39, 544 S.E.2d at 375. "Any subsequent conduct not in accordance with the terms of the contract may form the basis for a breach of contract action by either party but does not affect the existence of the contract." *Id.*

Finally, the Court rejects the argument that the option agreement was void as indefinite for its failure to specify a date by which closing had to occur. While a contract may fail for indefiniteness if there is hopeless ambiguity concerning its subject matter, *Smith v. Mullen*, 113 Va. 671, 675, 75 S.E.2d 130, 131 (1912), or when it is impossible to determine if a party made a promise or merely expressed an aspiration, *Smith v. Farrell*, 199 Va. 121, 128, 98 S.E.2d 3, 6-7 (1957), the Court is not aware of any Virginia

cases where a contract for the sale of real estate was found to be fatally indefinite simply for not specifying a time for performance. As noted above, when the contract is silent, the law implies a reasonable time in which to perform. *Ryland Group*, 229 Va. at 465, 331 S.E.2d at 403.

## 2. Plaintiff's Entitlement to Specific Performance

The Court's holding above, that the plaintiff timely exercised her option to purchase, does not necessarily mean that she is entitled to specific performance.

A claim for specific performance is one that sounds in equity. *Chattin v. Chattin*, 245 Va. 302, 307, 427 S.E.2d 347, 350 (1993). Specific performance can only be granted if there is no adequate remedy at law and specific enforcement of the contract is equitable between the parties. *Id*; *see also Ingram*, 340 S.C. at 105-06, 531 S.E.2d at 291. Because the law recognizes the unique nature of real property, the right to enforce title in real property can be specifically enforced. *Gaynor v. Hird*, 11 Va. App. 588, 593, 400 S.E.2d 788, 790 (1991) (*citing Hale v. Wilkinson*, 62 Va. (21 Gratt.) 75, 80 (1871)), *see also* John L. Costello, *Virginia Remedies*, § 14.01[2] (2005).

A plaintiff seeking specific performance on a real estate contract must prove not only the existence of a contract, but that "he has been able, ready, prompt, eager, and willing to perform the contract on his part. He must not have remained quiet or held himself aloof so as to enforce or abandon the contract as events might prove advantageous." *Hinkell v. Douglas*, 237 Va. 635, 638, 378 S.E.2d 621, 622 (1989). In other words, the plaintiff must have approached the contract in good faith and with clean hands, consistent with the maxim that "he who seeks equity must do equity." *See Bolling v. King Coal Theaters*, 185 Va. 991, 1000, 41 S.E.2d 59, 63 (1947).

In short, granting specific performance is a highly fact-intensive exercise that "depends upon the facts and circumstances disclosed by the admitted facts and the testimony at trial." *Loose v. Brubacher*, 219 Kan. 727, 735, 549 P.2d 991, 998 (1976). "It is a principle in equity that the court must see its way very clearly before it will decree specific performance." *Stearns v. Beckham*, 72 Va. (31 Gratt.) 379, 389 (1879).

The Court finds that the undisputed facts are insufficient to prove entitlement to specific performance as a matter of law.[3] Plaintiff obtained an appraisal of the property, and her May 5, 2004, notification to defendant indicated that she had arranged some type of financing to move forward with the purchase. The agreed facts, however, do not include the specifics of the financing arrangement, nor do they prove its viability. Without that information, it is impossible to conclude as a matter of law that plaintiff would have been financially able to proceed to closing.

The agreed facts also reveal that plaintiff presented to defendant a contract of sale on June 24, 2004. However, that contract of sale included additional terms concerning fence repair and tree removal that were not included within the original option agreement. While defendant was, following the May 5, 2004, exercise of the option, obligated to sell the property to plaintiff, she was only obligated to do so on the terms of the original option agreement. In short, defendant was well within her rights to refuse to sign the June 24, 2004, contract presented to her. While this non-conforming contract did not invalidate plaintiff's prior exercise of the option, it does raise potential questions about plaintiff's efforts to perform the bilateral contract.

This is particularly true as the agreed facts do not reveal what steps plaintiff took following defendant's July 1, 2004, refusal to sign the contract. It is not known if plaintiff returned to defendant and presented a second, conforming contract. Nor is it known if plaintiff's failure to do so was the result of communications from defendant indicating that defendant was unwilling to honor the contract on any terms. Without the presentation of evidence, it is equally difficult to determine at the summary judgment stage the significance of the delay between defendant's refusal to sell and plaintiff's filing of this suit.

In short, in order to prove entitlement to specific performance, plaintiff must prove more than mere exercise of the option. She must also prove that she "has been able, ready, prompt, eager, and willing to perform the contract on [her] part." *Hinkell*, 237 Va. at 638, 378 S.E.2d at 622. While she may

---

[3] The Court finds it unnecessary for purposes of these motions to decide at this time if defendant's alleged failure to timely respond to plaintiff's Requests for Admission mean that the same shall be deemed admitted, for even with such admissions, the agreed and admitted facts available to the Court would be insufficient to prove entitlement to specific performance as a matter of law.

ultimately meet that burdèn at trial, the admittedly limited agreed facts do not allow the Court to say that she has done so at this point.

Partial summary judgment is therefore granted for the plaintiff, since the Court has concluded based on the agreed facts that plaintiff successfully and timely exercised her option to purchase the property in question. Specific performance cannot be decreed, however, as there remain contested factual matters related to plaintiff's equitable burdens that must be fleshed out through further proceedings.

## Conclusion

Plaintiff's motion for summary judgment is granted in part and denied in part, and defendant's motion for summary judgment is denied. It is so ordered.