BONANZA MINING & SMELTER COMPANY *v.* WARE.

Opinion delivered April 7, 1906.

1.  PLEADING—INCONSISTENT DEFENSES.—In a suit against a corporation upon a contract, a subsequent answer denying that defendant executed the contract is inconsistent with the original answer which admitted that it executed the same. (Page 312.)

2.  APPEAL—OBJECTION NOT RAISED BELOW.—Objection that a supplemental answer is inconsistent with the original answer may be waived. (Page 313.)

3.  SALE OF LAND—DISTINCTION BETWEEN SALE AND OPTION.—Where a vendee executed his notes for the purchase money of land, and the vendor executed a deed which was placed in escrow to be delivered when the notes were paid, and nothing remained to complete the sale except the payment of the purchase money and delivery of the deed, the transaction amounted to a sale, and not to an option to purchase. (Page 314.)

Appeal from Marion Chancery Court; *T. H. Humphreys,* Chancellor; affirmed.

STATEMENT BY THE COURT.

The Bonanza Mining & Smelter Company is a corporation of Virginia, authorized to do business in this State. Appellee sues it on two promissory notes for $6,000 each, dated March 23, 1901. One of the notes was payable on or before September 16, 1901, the other on or before March 16, 1902. The notes bore interest from March 16, 1901, at the rate of 8 per cent. per annum, and the interest was payable semi-annually. Each note recited that it was given "for part of the purchase money of the S. W. ¼ of the N. W. ¼ of section 14, and the S. E. ¼ of the N.

E ¼ of section 15, township 17 north, range 15 west." The notes were signed, "F. S. Coburn, Pres., George Johnson, Secy." The notes in one corner contain a recital showing that "deed was in escrow in Bank of Yellville, at Yellville, Ark., to be delivered upon payment of note, due September 16, 1902."

The appellee attaches as an exhibit to his complaint a deed from himself and wife purporting to convey the above-described lands, in consideration of the aforesaid notes which are accurately described therein, "unto the said F. S. Coburn, president, the Bonanza Mining & Smelter Company, of Arkansas, and unto its successors and assigns forever."

There was a prayer for judgment for the amount of the notes and interest, and for a vendor's lien to be declared on the lands described, and for other and proper relief. The summons was served upon J. C. Floyd, the agent for appellant, January 24, 1902.

The caption to the complaint was as follows: "In the Marion Circuit Court, February term, 1901, J. C. Ware, plaintiff, *v.* The Bonanza Mining & Smelting Company, defendant." The record shows that the first answer was filed February 19, 1902. In this answer the case was styled as in the complaint towit: "J. C. Ware, plaintiff, *v.* The Bonanza Mining & Smelter Company, defendant." This answer contained substantially the following allegations: That the defendant became desirous of acquiring title to a certain ledge or outcropping of zinc, supposed to be on the lands described in plaintiff's complaint; that John H. Dickerson, agent and partner of plaintiff, informed defendant that said ledge was on said land, and asserted that same was the property of the plaintiff, who could convey the same in fee simple to the defendant; that, acting upon the representations of said Dickerson and believing that said lands containing said outcropping of zinc were the property of the plaintiff, J. C. Ware, it agreed to give to the said J. C. Ware the two notes set forth in the complaint, upon his placing in the Bank of Yellville a deed in escrow conveying to it the eighty acres of land containing the said outcroppings of zinc as aforesaid, the said sale of land to become complete upon the payment by defendant of said notes and the delivery of said deed; that the defendant had no such title or interest as to authorize the plaintiff to foreclose a vendor's

lien on same, the plaintiff reserving title in himself; that plaintiff well knew that defendant desired to purchase the lands containing said outcropping of zinc, and did not desire to purchase any other, and that the plaintiff and said Dickerson knew that the plaintiff did not own and could not convey the same; and that, relying on such fraudulent representations of said Dickerson, it agreed and contracted with said Ware to purchase said lands for the consideration of $12,000, and executed the notes described in the plaintiff's complaint to secure the payment of said sum; and that, by reason of the fraud or mistake of the said Dickerson, said notes should be held to be void.

This answer was signed by J. C. Floyd, attorney for defendant. On August 19, 1902, an amended answer was filed. In this the case was styled, J. C. Ware, plaintiff, *v.* Bonanza Mining & Smelter Company of Arkansas, defendant. The amended answer was the same in substance as the original, and in addition contained allegations denying that plaintiff had sold it the land described in his complaint, and denying that it ever took possession of the land, and denying that plaintiff had ever executed a good and sufficient deed to said lands, and denying that he had placed such deed in the Bank of Yellville by agreement with defendant, to be delivered on payment of the notes described and set forth in the complaint, and alleging in substance that the contract made with Ware was in the nature of an option contract, and was intended as such, and that, on account of the fraud and misrepresentations of one J. H. Dickerson, agent of said J. C. Ware, defendant has declined to take the property under said option.

At the February term, 1903, appellant filed what is designated in the record its "separate answer," which is, in substance, as follows: That the Bonanza Mining & Smelter Company is a corporation duly organized in the State of Virginia, is a distinct, separate and independent corporation from the Bonanza Mining & Smelter Company of Arkansas, which was organized under the laws of South Dakota as the Bonanza Gold Mining Company of Boston, and its charter afterwards amended, changing its name to the Bonanza Mining & Smelter Company of Arkansas, which will appear more fully from copies of articles of incorporation of said companies marked exhibits A and B, and

made part of said answer. That the contract and notes relied on by plaintiff herein were made with and by F. S. Coburn, for the Bonanza Mining & Smelter Company of Arkansas, of South Dakota, and not by or for the Bonanza Mining & Smelter Company, organized in Virginia, defendant herein. That, on the date of the execution of said contract and notes sued on, defendant company had no corporate existence, and it denies that the two notes sued on for $6,000 each with 8 per cent. interest from date, executed March 23, 1901, purporting to bind the Bonanza Mining & Smelter Company to pay said sum, and signed by F. S. Coburn, president, and George Johnson, secretary, were executed by the defendant company to the said J. C. Ware, and further deny that F. S. Coburn, president, and George Johnson, secretary, had any authority to act for it at said time in the execution of said notes, and deny that defendant company at any time thereafter ratified their acts in the execution of said notes and contract for the purchase of said lands as the act and deed of said corporation, and deny that it ever at any time assumed payment of said notes, or contracted with F. S. Coburn or J. C. Ware for the payment of the same, and deny that said George Johnson, who signed said notes as secretary, was ever secretary of their said company, or even a stockholder therein. It alleges that the Bonanza Mining & Smelter Company, defendant, was organized in Virginia, July 17, 1901, with Fred S. Coburn as president and Frank K. Raymond as secretary, and had no existence at the date of the alleged contract and notes relied on by plaintiff in this action.

The answer concludes with prayer for judgment and for all proper relief.

To this answer were attached exhibits A and B, showing the incorporation of "the Bonanza Mining & Smelter Company," of Virginia, on the 18th day of July, 1901, and the incorporation of the "Bonanza Gold Mining Company of Boston" on the 11th day of September 1899, in South Dakota, and an amendment to the articles of incorporation of the "Bonanza Gold Mining Company of Boston," made November 1, 1900, changing the name of said corporation to that of "the Bonanza Mining & Smelter Company of Arkansas," and reciting "with a branch office at Washington, D. C." Also a certificate of the amendments signed by F. S.

Coburn, president, and George Johnson, secretary, dated April 6, 1901.

The decree of the court recites: "On this day comes the plaintiff by attorney, and defendants Bonanza Mining & Smelter Company, organized in Virginia, by attorney, and Bonanza Mining & Smelter Company of Arkansas by attorney, and, all parties announcing ready for trial, this cause is submitted to the court upon the complaint of plaintiff with exhibits thereto attached, the answer of Bonanza Mining & Smelter Company of Arkansas, and the separate answer of the Bonanza Mining & Smelter Company organized in Virginia with exhibits thereto attached, the depositions of certain witnesses for plaintiff and the original answers offered by way of evidence for plaintiff, and the depositions of certain witnesses (naming them) for the defendants."

"Whereupon the·court finds from the evidence that on the 23d day of March, 1901, F. S. Coburn, for the Bonanza Mining & Smelter Company afterwards organized, made and entered into a contract with the plaintiff, J. C. Ware, for the purchase of the lands" described "for the sum and price of $12,000, evidenced by two promissory notes of $6,000 each" (describing them); "that on the 23d day of March, 1901, F. S. Coburn and George Johnson, secretary for Bonanza Mining & Smelter Company, executed their promissory notes for said sum of money aforesaid, and that each of said notes is past due and unpaid; that on the 21st day of March, 1901, J. C. Ware and wife, Mary M. Ware, made and executed their warranty deed conveying said lands to the defendant, the grantee therein being F. S. Coburn, president of Bonanza Mining & Smelter Company, by mistake, when it should have been Bonanza Mining & Smelter Company; that on the 11th day of May, 1901, the plaintiff J. C. Ware, and Mary M. Ware made and executed a warranty deed conveying said lands to F. S. Coburn, president of the Bonanza Mining & Smelter Company of Arkansas, at the request of the attorney of defendant Bonanza Mining & Smelter Company." "The court further finds that the Bonanza Mining & Smelter Company is a corporation duly organized under the laws of Virginia, and that the plaintiff is entitled to a specific performance of said contract and for judgment on said notes." The court thereupon rendered judgment against "the defendant Bonanza Mining & Smelter

Company of Virginia" in the sum of $12,000 principal, and $2,986.66 interest, and declared same a lien on the lands, and ordered same sold to pay the judgment, and decreed all costs against defendants. The Bonanza Mining & Smelter Company of Virginia appealed.

Other facts stated in the opinion.

*J. C. Floyd,* for appellant.

1. The contract relied on by appellee was only an option. When the notes were not paid when due, and thereafter the deed was withdrawn by appellee from escrow, the contract was at an end. 57 L. R. A. 173; 94 N. W. 469; 120 Ia. 218; Black, Law Dict. 853; 39 W. Va. 214; 19 S. E. 536; 19 S. W. 27; 93 Ky. 185; 21 L. R. A. 127; 33 Fed. 530; 56 Fed. 1; 26 S. W. 334; 7 Tex. 356.

2. The proof establishes the fact that appellant had no existence at the date of the alleged contract, and is therefore not bound by a contract to which it was not a party. Clark on Cont. § 217; 9 Cyc. 386; 109 Ala. 393; 71 Ala. 122.

3. Having no corporate existence at the date of the alleged contract, appellant can not be held responsible for the acts of F. S. Coburn, C. E. Wood or the Bonanza Mining & Smelter Company of Arkansas, on contracts made by either with appellee, previous to its incorporation. 150 Mass. 252; 5 L. R. A. 586; 141 Mass. 148; 38 L. R. A. 300.

*Wood Bros.,* for appellee.

1. The contract was an absolute sale of the land; a contract stipulating everything to be done by both parties, in which the minds of the parties met and agreed, resulting in the sale on credit according to the tenor of the notes, and was consummated on the part of appellee by his executing a deed and delivering possession of the land. Neither party could rescind.

2. The evidence establishes the fact that the purchase was made for appellant, which was then organized for that purpose and was afterwards chartered.

A corporation is bound by a contract made for its benefit before the issuance of its charter, but after the incorporators had agreed to incorporate and had filed application for charter. 3 L. R. A. 583. The corporation can not hold the property and

refuse to pay for it.   26 L. R. A. 859.   Nor can it repudiate the purchase after its obligation has-accrued.   40 L. R. A. 851.

3.   A corporation may ratify a contract which it has the power to make.   40 L. R. A. 851; Bishop on Cont. 304, 310, 1110; Morawetz on Priv. Corp. § § 543, 549; 10 Cyc. 1065, *et seq.;* 3 Enc. of Ev. 631, *et seq.*

WOOD, J., (after stating the facts.)   The various answers leave the issues in much confusion.   It is clear from the complaint that only the Bonanza Mining & Smelter Company of Virginia was sued.   There is nothing in the record to show that the "Bonanza Mining & Smelter Company of Arkansas," a corporation of South Dakota, was sued.   There is no order of record making it a party to the suit.   No appearance was entered by it, and no answer was filed by it.   True, the decree of the court recites that the Bonanza Mining & Smelter Company of Virginia and the Bonanza Mining & Smelter Company of Arkansas "come by attorney," and that the cause is heard upon, *inter alia,* the answer of the Bonanza Mining & Smelter Company of Arkansas. But we do not find any answer of the "Bonanza Mining & Smelter Company of Arkansas," a corporation of South Dakota, in the record; so that it must be taken from the record that all the answers, original, amended and separate, were filed by the "Bonanza Mining & Smelter Company" of Virginia, the only corporation sued in this action.   As thus considered, the defenses set up are inconsistent.   For in the original answer, which was introduced in evidence, appellant admits that it made a contract with appellee for the purchase of the lands, and executed the notes set forth in the complaint, but alleged that the purchase was to become complete upon the payment of these notes, and the delivery of a deed to the lands, which should be deposited in the Bank of Yellville in escrow, awaiting the payment of the notes. It is alleged also in this answer that the plaintiff should not recover on the notes because of the false and fraudulent representations of one Dickerson, the agent and partner of plaintiff, as to the title and character of the land alleged to have been sold to appellant.   While in the amended answer, in addition to this defense, it is set forth that the contract was only an option for the purchase of the land, which should fail on account of the fraudulent representations of Dickerson concerning same; and,

in what is designated as the "separate answer," appellant for the first time denies that it executed the notes sued on, and sets up that the contract and notes were made with and by F. S. Coburn for the "Bonanza Mining & Smelter Company of Arkansas," and not for appellant, and that at the date of the execution of such notes appellant had no corporate existence. So the defenses set up in the original and the amended answers, and that set up in the so-called "separate answer" are inconsistent. However, it does not appear that any of these answers were verified. Appellee permitted them to be filed in the manner indicated without any objection, and treats them here as raising the following issues:

1. "That the contract between appellant and appellee concerning the land was merely an option to purchase.

2. That the appellant was not in existence at the time the notes sued on were executed and the alleged sale of the land made; that if there was a sale of the land, the sale was to the Bonanza Mining & Smelter Company of Arkansas, a corporation of South Dakota, and that appellant is not liable."

1. The testimony is voluminous, and it could serve no useful purpose to review it in detail.

The appellee, as the owner of the land, testified, in substance, that one Dickerson came to him to buy the land for some Washington parties. Appellee says: "They submitted another proposition, that they would pay me $6,000 of the money at the end of six months, and another $6,000 at the expiration of twelve months, notes to bear 8 per cent. interest from date until maturity. It was made by the company through Mr. Dickerson. I accepted the proposition, and took two notes for $6,000 each, dated Washington, D. C., March 23, 1901, signed by F. S. Coburn, president, and George Johnson, secretary. They were president and secretary of the Bonanza Mining & Smelter Company. The company accepted that deed as a conveyance of land, and executed a deed to said company on the 21st day of March, 1901, and the deed was the conveyance of the above-described land in consideration of the $12,000. I delivered the deeds to the Bank of Yellville for the Bonanza Mining & Smelter Company. The company accepted that deed as a conveyance of land, and turned the notes over to me, and, by agreement with me and the Bonanza Mining & Smelter Company, the deed was to be

turned over to the company by the bank on the payment of the said notes, and I turned the land over to them, and they came and took possession of it. Mr. Coburn came and took possession of it, and he and Mr. Dickerson worked the land, and I have never had any control or possession of the land since that time. I owned the land individually. Neither J. H. Dickerson nor any one else had any interest in same till I sold it to the Bonanza Mining & Smelter Company. Dickerson was not my agent in the sale of this land, and did not represent me in any way."

Dickerson, who claims to have represented appellant in the purchase of the property, and who negotiated the transaction between the parties, agrees substantially with the appellee as to the terms of the contract. Their testimony and the notes and the deeds in evidence show that the chancellor was correct in holding that the contract was a sale, and not a mere option to purchase.

In *McMillan* v. *Philadelphia Company,* 159 Pa. 142, it is said: "The distinction between an option and a contract of sale or lease is broad and plain. An option is an unaccepted offer. It states the terms and conditions on which the owner is willing to sell or lease his land, if the holder elects to accept them within the time limited. If the holder does so elect, he must give notice to the other party, and the accepted offer thereupon becomes a valid and binding contract. If an acceptance is not made within the time fixed, the owner is no longer bound by his offer, and the option is at an end. A contract of sale or lease fixes definitely the relative rights and obligations of both parties at the time of its execution. The offer and acceptance are concurrent, since the minds of the contracting parties meet in the terms of the agreement."

"An option is simply a contract by which the owner of property agrees with another that he shall have a right to buy the property at a fixed price within a certain time." *Litz* v. *Goosling,* 19 S. W. 527, 21 L. R. A. 128; *Hopwood* v. *McCausland,* 120 Iowa, 218; *Hanly* v. *Watterson,* 39 W. Va. 214; *Johnson* v. *Trippe,* 33 Fed. 530.

This was not a mere offer to sell on the part of the vendor, which the vendee could accept or reject at pleasure within the time prescribed for the payment of the notes. Upon the delivery

of the deed appellee had the right to demand the payment of the notes when due. True, the deed was in escrow, but that was for the benefit of the vendor, a benefit which he could waive at any time by tendering the deed to the grantee. Nothing remained to complete the sale except the payment of the notes and the delivery of the deed, and the vendee could not have escaped the payment of these notes if the vendor, either before or after the time for the payment of the last note and within the period of limitation for liability on the notes, had delivered or offered to deliver to the vendee a deed to the land. If it had been only an option to purchase, appellee could not have compelled the holder of the option to pay the notes upon an offer to deliver the deed and possession of the property under it. If an option only, the actual delivery of the deed and possession of the property under it would not have entitled the appellee as the owner of the land to payment of the notes. If an option only, the holder of the option could avoid the payment of the notes simply by refusing to do so until the time when they were due had expired. But we do not so understand this contract. There was a straightout contract for the sale of the land, the specific performance of which either party to it had the right to demand of the other when it had fully complied with the conditions on its part.

2. Having determined that there was a contract for the sale of the land, the next questions are, with whom was it made, and was appellant liable? The testimony of appellee shows that the contract he made was with Dickerson, who claimed to be representing some Washington parties. True, he testified in a general way that he "sold the lands to the Bonanza Mining & Smelter Company, that bought and operated the mine known as the Beulah on Clabber Creek." He also testified that F. S. Coburn and George Johnson were president and secretary, respectively, of the Bonanza Mining & Smelter Company, and that "he executed a deed to the company," etc. But the other uncontradicted proof in the record, documentary and oral, shows that this was matter of opinion or conclusion on the part of appellee, and that he was mistaken about it. Dickerson, who negotiated the deal with Ware, claimed to be representing Washington parties, but his evidence shows that he was really representing

one F. S. Coburn, and his testimony,. as well as the testimony of Coburn, shows that the land was sold to Coburn. True, the notes name the Bonanza Mining & Smelter Company as the payer, and are signed by F. S. Coburn as president and George Johnson as secretary, and the original deed was executed to the' Bonanza Mining & Smelter Company. But the articles of incorporation of the appellant, made an exhibit, show that it was not in existence at the time these notes and deed were executed. The notes were therefore not executed by appellant, nor was the deed made to it. This is conceded by appellee's counsel. But they contend that appellant was organized at this time, and afterwards chartered for the purpose of succeeding to all the rights, and assuming all the obligations of the "Bonanza Mining & Smelter Company of Arkansas," a corporation of South Dakota, that was in fact the real purchaser. There is an exhibit in the record showing that at the time the notes and deed were executed there was a corporation in existence chartered under the laws of South Dakota, and known as the "Bonanza Mining & Smelter Company of Arkansas," and there is enough perhaps to show that F. S. Coburn and George Johnson were, respectively, the president and secretary of such corporation. But, if this be sufficient, with the other proof, to show that the "Bonanza Mining & Smelter Company of Arkansas," the Dakota corporation, purchased the land of appellee, it falls far short of showing that appellant purchased same, or was liable for the purchase price thereof. There is no proof whatever in this record that appellant, the Virginia corporation, ever assumed the obligation of the Dakota corporation in any way. This was necessary, and the burden was upon appellee to show it before he could hold appellant liable. It is obvious that neither appellee nor Dickerson, his witness, knew anything about either the Dakota or the Virginia corporations, and the testimony of Coburn does not show that he was authorized by the Virginia corporation to purchase the property from the Dakota corporation, or that he did so. The utmost that his testimony tends to establish along this line is that he made the purchase. It nowhere appears that he made, or was authorized to make, it for appellant, while the proof on behalf of appellant is clear and undisputed that it was not connected in any manner with the Dakota corporation. True,

Coburn was the president of both corporations, but he was the only stockholder and member of the Dakota corporation that had any interest in the Virginia corporation. The members of the two corporations were entirely different, and the corporations were independent of each other.

One of the witnesses for appellee, towit, C. E. Wood, testified that he was one of the incorporators of appellant, and, among other things, he said: "The Virginia company was organized to handle any properties it might see fit to purchase, and it declined to purchase the Ware property and one or two other properties which Mr. Ware was desirous of transferring to the company. In fact, the Virginia company, when it was organized, purchased only the interest of F. S. Coburn and the Bonanza Mining & Smelter Company of Arkansas in the properties which were conveyed to it, but did not at any time assume any of the obligations upon these properties nor agree to pay the same, but left the matter open to the determination of the company, and it never at any time assumed or authorized assumption of any obligation given by Coburn individually, or by the Bonanza Mining & Smelter Company of Arkansas, or the South Dakota Company." He further testified: "The Bonanza Mining & Smelter Company of Virginia never at any time either purchased or agreed to purchase the J. C. Ware property, and was never at any time in possession of it or exercised any authority over it or considered that it had any title to it."

Other witnesses for appellant corroborate this, and we do not find anything in the record to refute it. There is no deed in this record showing that Coburn, or "The Bonanza Mining & Smelter Company of Arkansas," conveyed the Ware land to the appellant, and no proof that appellant assumed the obligation of Coburn or of the South Dakota corporation to pay for the land. True, Ware is now offering to convey the land to the appellant upon the payment of the notes executed by Coburn or the South Dakota corporation, but appellant refuses to take the land and pay the price. Under the proof, we think it has the right to do so. This is not the case of a corporation holding on to property and pleading the doctrine of *ultra vires* against the obligation to pay for it, as in *Seymore* v. *Spring Forest Cemetery Association,* 26 L. R. A. 859; and the facts

of this case differentiate it entirely from the case of *Spring Garden Bank* v. *Hulings Lumber Co.,* 3 L. R. A. 583, cited and relied on by appellee. In that case, it is said: "The said company was at the time the deed was delivered to and accepted by it a complete corporation duly chartered and organized; and not only this, but it had, at the date of said deed, a potential existence which subsequently became an actual and legal corporation." The same parties, who were a *partnership,* with a "potential existence" and who had signed an agreement to become a corporation, at the time the deed was executed, afterwards became the corporation, and "accepted the deed executed and delivered to it." Of course, it was held in that case that the deed vested the title to the lands described therein to the corporation. But there is nothing in this case like that, and therefore we have not thought it necessary to review that case *in extenso.* We see nothing in the facts of this record to justify appellee in invoking the doctrine of ratification against appellant. The appellee fails to show a cause of action against appellant. The decree is therefore reversed, and the complaint is dismissed for want of equity.

HILL, C. J., not participating.