2010 Ark. App. 206

**Wade ROETZEL, Appellant/Cross–Appellee**

v.

**Troy COLEMAN, Appellee/Cross–Appellant.**

**No. CA 09–162.**

Court of Appeals of Arkansas.

March 3, 2010.

Brian Gene Brooks, Greenbrier, James A. Simpson Jr., Simpson & Simpson, Searcy, for Appellant.

Robert Welton Hudgins, Searcy, for Appellee.

JOSEPHINE LINKER HART, Judge.

The White County Circuit Court entered a summary judgment that construed an agreement between appellant Wade Roetzel and appellee Troy Coleman to be an option that Roetzel failed to exercise. The court also found that Coleman failed to prove his damages. The appeal and cross-appeal challenge those rulings. We affirm on direct appeal and on cross-appeal.

Coleman is the owner of certain real property containing over 1,100 acres located in White County. On February 1, 2004, the parties entered into an agreement, titled "CONTRACT OF SALE," that provided, in pertinent part, as follows:

1. For the consideration and purposes herein set forth, SELLER [Coleman] does hereby let, PURCHASE ON CONTRACT and demise unto SALE the following described real property situated in White County, Arkansas to wit: [description follows.] Pipeline easement for gas and water pertaining to ground, all farm programs and bases in Bald Knob, Arkansas and or as shown in Exhibit A, Located in White County on Sections 3, 10, 11, 22, 23, 27 Arkansas, White County.

2. The term of this CONTRACT shall be for 3 years commencing February 1st 2004 but can be terminated either by the SELLER or BUYER under the terms and conditions set forth hereinafter. SELLER grants BUYER the option and right to purchase (OUTRIGHT) the above described real property for the purchase price of $1,033,375.00, ($1,033,375.00 less $100,000.00 down) @6.0% interest. BUYER shall have the right to exercise said option to purchase or sell any part at anytime so long as SELLER agrees to the price, during the term of the CONTRACT. BUYER agrees to apply for any programs for the purpose of improving the land and agrees to sign off any programs that BUYER may ask for as long as BUYER and SELLER agrees (such government programs, private mediation, etc.). BUYER shall give to SELLER a minimum of thirty (30) days written notice of BUYER'S intention to exercise their option to purchase the above described real property.

. . . .

4. If BUYER breaches any of the terms and conditions of this CONTRACT other than the payment of the CONTRACT, and if after ninety (90) days written notice, BUYER fails to correct said breach or deficient condition, said CONTRACT shall automatically terminate. In the event BUYER fails to pay the CONTRACT, and after ninety

(90) days written notice BUYER does not cure such default within said ninety (90) day period, said CONTRACT shall automatically terminate at the end of said ninety (90) day period.

5. SELLER agrees to accept and BUYER agrees to pay as CONTRACT for said property the sum of $30,000.00 per year plus 25% of the crop yield, not to exceed $100,000.00 total, payable after January 1, 2004 but before December 31, 2004, continuing the same for the length of the CONTRACT, with the entire amount going to loan. BUYER shall be required upon execution of the CONTRACT to deposit the sum of $100,000.00 with SELLER as a security deposit to insure that BUYER shall comply with all of the terms and provisions of this agreement including the payment of CONTRACT.

. . . .

14. If BUYER shall fail or refuse to pay the PAYMENTS aforesaid at the time and in the manner set forth herein, or to do or perform any other of the covenants on the part of the BUYER herein contained, or shall violate in any particular any of the conditions hereof, SELLER may, at his option and in accordance with the aforesaid notice requirements, declare this CONTRACT terminated, and shall have the right to enter upon and take possession of the property and premises and to evict and expel the BUYER, or his agents, or representatives from said property, with possible prejudice to any rights which SELLER may have.

On July 8, 2005, Coleman hand delivered a notice to Roetzel cancelling the agreement. The notice also asserted that certain unspecified sums, including interest to date and expenses for fertilizer and repairs to a well, were due immediately. The notice further provided that, if Roetzel agreed to the immediate cancellation of the contract, these sums would be forgiven.

On July 21, 2006, Roetzel executed an affidavit stating that he and his wife sent notice to Coleman on that same day exercising the option to purchase the property. This affidavit was recorded in the land records.

On July 5, 2007, Coleman filed the complaint in this action, alleging that Roetzel never performed his obligations under the agreement and that Roetzel owed approximately $30,000 in expenses for farming operations advanced by Coleman. The complaint alleged that the agreement was an option that was not binding upon Coleman because of inconsistent terms, poor draftsmanship, and a lack of objective intent of Roetzel to enter into the agreement. The complaint further alleged that Coleman cancelled the agreement, but Roetzel continued to assert an interest in the property. The complaint prayed that title to the real property be quieted in Coleman and sought damages for the unpaid expenses and attorney's fees Coleman incurred in a bankruptcy case filed by Roetzel.

Roetzel filed a pro se response in which he denied the material allegations of the complaint. Through counsel, Roetzel amended his response to assert the affirmative defenses of payment, waiver, estoppel, and setoff. Roetzel also filed a pro se counterclaim denominated as a "Complaint for Specific Performance" in which he sought to have a third party, Darrell Murray, pay off the balance owed on the property. Coleman denied the material allegations of the counterclaim and asserted the defense of laches.

On July 16, 2008, Coleman filed his motion for summary judgment in which he argued that the agreement was so poorly drafted by Roetzel that there was never a meeting of the minds for a contract for

sale and, therefore, title to the property should be quieted in Coleman. In the alternative, Coleman argued that, if there was a contract for sale, Roetzel breached the contract; was given notice of the breach; and failed to remedy the breach. This, according to Coleman, resulted in the forfeiture of any rights Roetzel had under the contract.

Roetzel responded to the motion by asserting that the agreement was an installment land contract, and that there was no ambiguity. He also asserted that Coleman had waived any breach of the agreement by accepting payments, both before and after the notice of cancellation.

The circuit court initially denied the motion for summary judgment, finding that there were factual disputes that must be determined. However, on September 5, 2008, after another hearing, the court issued its order granting the motion for summary judgment. The court found that the agreement was an option for Roetzel to purchase the property from Coleman. The court found that there were three methods by which Roetzel could exercise the option and purchase the property. These methods included paying the full purchase price in cash or paying $100,000 at the time of execution of the agreement or by paying $30,000 at the time of execution, with the balance to be paid by December 31, 2004. The court found that the $100,000 was consideration for the option and that Coleman was not bound until Roetzel had paid the $100,000, which was not done. The court also found that the agreement was neither a lease nor a contract for sale. The court concluded that the option terminated on February 2, 2007, at the latest. Neither party was found to have proven its damages. The court concluded that Coleman was entitled to have title quieted in himself and the court dismissed Roetzel's counterclaim for specific performance. The parties timely filed notice of appeal and notice of cross-appeal.

Before we address the merits of the appeal and cross-appeal, we first take up Coleman's argument that the direct appeal should be dismissed because we do not have appellate jurisdiction. This argument is based on Roetzel's failure to strictly follow the requirements of Rule 5 of the Arkansas Rules of Appellate Procedure—Civil. Citing *Clark v. Tobias*, 368 Ark. 591, 247 S.W.3d 886 (2007), for the proposition that compliance with Rule 5 must be "strict," Coleman asserts that this appeal must be dismissed because Roetzel failed to follow the procedures specified in the rule for securing an extension of time to prepare the trial transcript, which makes its filing untimely. Specifically, Coleman argues that Rule 5 was not followed in that it was the court reporter, not Roetzel, who sought the extension of time to complete the record. We decline to dismiss this appeal.

In *Holloway v. Arkansas State Board of Architects*, 348 Ark. 99, 71 S.W.3d 563 (2002), also a case where the court reporter sought the extension of time, the supreme court held that an appellee may not challenge the appellant's failure to strictly comply with Rule 5 after a transcript has been lodged within the time granted by the circuit court. That is exactly the situation here. On December 19, 2008, the circuit court entered an order extending the time to file the record until February 19, 2009. The record was filed on February 15, 2009. It was not until May 20, 2009, that Coleman filed his motion to dismiss the appeal. We therefore consider the appeal on the merits.

This court's standard of review for a summary judgment is well settled:

> [S]ummary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material

fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. Greenwood v. Anderson, 2009 Ark. 360, at 3, 324 S.W.3d 324, (quoting Verdier v. Verdier, 364 Ark. 287, 289–90, 219 S.W.3d 143, 144 (2005)).

Roetzel first argues that the circuit court erred in granting summary judgment because the agreement was ambiguous and it was for a jury to determine the nature of the agreement. We disagree.

When a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *Roberts Constr. Co. v. Valentine–Wooten Rd. Pub. Facility Bd.*, 2009 Ark. App. 437, 320 S.W.3d 1. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Fryer v. Boyett*, 64 Ark.App. 7, 978 S.W.2d 304 (1998). However, when ambiguous language is used in the contract, other rules apply. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Roberts Constr. Co., supra*. The determination of whether ambiguity exists is ordinarily a question of law for courts to resolve. *Id.* The court may also interpret an ambiguous contract as a matter of law when the ambiguity can be resolved by reference to the contract language itself. *See Zulpo v. Farm Bureau Mut. Ins. Co.*, 98 Ark.App. 320, 255 S.W.3d 494 (2007). But, when a contract is ambiguous as to the intent of the parties, and the meaning of the language depends on disputed extrinsic evidence, the issue is a question of fact for the jury. *Perry v. Baptist Health*, 358 Ark. 238, 189 S.W.3d 54 (2004); *see also Minerva Enters., Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993).

The circuit court could properly conclude from the plain language of the agreement between the parties that the agreement was an option, rather than a contract for sale. Our supreme court has distinguished between an option and a contract for sale as follows:

The distinction between an option and a contract of sale or lease is broad and plain. An option is an unaccepted offer. It states the terms and conditions on which the owner is willing to sell or lease his land, if the holder elects to accept them within the time limited. If the holder does so elect, he must give notice to the other party, and the accepted offer thereupon becomes a valid and binding contract. If an acceptance is not made within the time fixed, the owner is no longer bound by his offer, and the option is at an end. A contract of sale or lease fixes definitely the relative rights and obligations of both parties at the time of its execution. The

offer and acceptance are concurrent, since the minds of the contracting parties meet in the terms of the agreement. *Bonanza Mining & Smelter Co. v. Ware,* 78 Ark. 306, 314, 95 S.W. 765, 768 (1906) (quoting *McMillan v. Philadelphia Co.,* 159 Pa. 142, 28 A. 220 (1893)). *See also Indiana & Arkansas Lumber & Mfg. Co. v. Pharr,* 82 Ark. 573, 102 S.W. 686 (1907). Our supreme court has also explained that

> an option is not a sale. It is not a contract by which one agrees to sell and the other to buy. It is only an offer by one to sell within a limited time and a right acquired by the other to accept or reject such offer within such time. When this privilege is exercised by acceptance, then and not until then does it become a contract of sale.

*Swift v. Erwin,* 104 Ark. 459, 465, 148 S.W. 267, 269 (1912). In the present case, there is no obligation on Roetzel to purchase the property. Although Roetzel goes through the agreement paragraph by paragraph and discusses how the language may support the interpretation that the agreement is a contract for sale, nowhere does Roetzel point to any obligation on his part to purchase the property. The only obligation the agreement imposed upon Roetzel was the payment of $100,000 by December 31, 2004, as consideration for the option, which the circuit court found was not done. Roetzel does not otherwise argue that he exercised his option, and we will not make an argument for him. *See Yarborough v. Arkansas Dep't of Human Servs.,* 96 Ark.App. 247, 240 S.W.3d 626 (2006).

Where the issue of ambiguity may be resolved by reviewing the language of the contract itself, it is a circuit court's duty to make such a determination as a matter of law. *Zulpo, supra.* Because the nature of the agreement could properly be determined as a matter of law, the circuit court did not err in granting summary judgment finding that the agreement was an option.

Roetzel's second point is that Coleman waived his right to declare a forfeiture by accepting late payments. We cannot address this question because the circuit court never expressly ruled on the issue, which Roetzel admits. Without a ruling from the circuit court, we have no basis for a decision and we are precluded from reviewing Roetzel's argument on this point. *Kralicek v. Chaffey,* 67 Ark.App. 273, 998 S.W.2d 765 (1999).

As his sole point on cross-appeal, Coleman argues that the circuit court erred in dismissing his claim for damages. Specifically, he contends that he did not request a ruling on damages as part of his motion for summary judgment, and he had not yet put on his proof as to damages.

In its order granting summary judgment, the circuit court found that neither party had proved any damages. At the first hearing on the motion for summary judgment, Coleman stated that he was not seeking summary judgment on that issue. He also said that he wanted title quieted and then he would decide whether he would pursue the claim for damages. However, there is no indication that Coleman was reserving the issue of damages at the second hearing or that the circuit court agreed to a reservation of the issue. The issue was submitted to the court without explicit objection. It is the duty of the appellant to make his record and we must resolve all doubts on behalf of the appellee on appeal. *See Brown v. Arkoma Coal Corp.,* 276 Ark. 322, 634 S.W.2d 390 (1982). Moreover, the circuit court construed the option agreement and determined that, under the agreement, Coleman was not entitled to damages. There is no explanation in Coleman's brief

as to why he would be entitled to damages under the agreement when the option was never exercised. Thus, the circuit court properly granted summary judgment as a matter of law.

Affirmed on direct appeal; affirmed on cross-appeal.

GLADWIN and BROWN, JJ., agree.