

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-15-771

| | |
|---|---|
| PATTON HOSPITALITY MANAGEMENT, LLC<br>APPELLANT | Opinion Delivered: May 25, 2016 |
| | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | [NO. CV-14-1620-4] |
| BELLA VISTA VILLAGE COOPERSHARES OWNERS ASSOCIATION, INC.<br>APPELLEE | HONORABLE JOHN R. SCOTT, JUDGE |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Patton Hospitality Management, LLC (Patton) brings this appeal to challenge the Benton County Circuit Court's orders granting summary judgment in favor of Bella Vista Village Coopershares Owners Association, Inc. (the Association), awarding attorney's fees to the Association, and finding Patton in contempt of court. After considering the merits of this appeal, we find no error and affirm.

### I. *Background*

We begin by identifying the entities that are integral to the understanding of this appeal. Appellee the Association owns a resort in Benton County known as Greens I, and appellant Patton is a management company that entered into a contract to manage Greens I. Although not a party to the litigation, Escapes Travel Choices, LLC (ETC), a company that contracted to provide reservation services for Greens I, also factors heavily into the outcome of this case. The underlying litigation arose when the Association terminated

Patton's management agreement. This appeal boils down to a dispute regarding whether the Association was contractually bound to notify ETC of its intent to terminate that agreement with Patton.

In August 2001, the Association and a company known as Escapes II, Inc. (Escapes II) entered into a management agreement (Management Agreement) wherein Escapes II agreed to provide management services for Greens I. The Management Agreement included a provision that allowed Escapes II to assign its rights under the contract to another management firm if the Association consented.

Escapes II eventually changed its name to Escapes!, Inc., and in October 2004, Escapes!, Inc., the Association, ETC, and Escapes Property Management, LLC (EPM) entered into an affiliation agreement (Affiliation Agreement). The Affiliation Agreement provided for certain aspects of the management of Greens I; it made Greens I an ETC resort and provided for the implementation of a reservation system for which ETC would be responsible. It included a provision that "the Developer, the Association, and the Management Company agree to immediately notify ETC, LLC of any change in any fact or circumstance affecting the operation of the Resort . . . including but not limited to the termination of any existing management company."

Pursuant to the terms of the August 2001 Management Agreement, Escapes II assigned its rights under the Management Agreement to EPM. A first amendment to the Management Agreement memorialized this assignment in October 2012. In January 2013, EPM assigned its rights and responsibilities under the Management Agreement to Patton, and a second amendment to the Management Agreement was executed.

The Association, Patton, and ETC executed an agreement referred to as the tri-party agreement (Tri-Party Agreement) in January 2013.[1]  According to the agreement, it was entered into "to address and/or clarify certain items related directly or indirectly to the Project and Management Agreement."  Paragraph 12(f) of the Tri-Party Agreement contained a clause central to this case specifically providing that

> [t]his Agreement (including the Exhibits to this Agreement) supercedes any other agreement, whether written or oral, that may have been made or entered into by any party or any of their respective Affiliates . . . relating to the matters contemplated hereby.  This Agreement (together with the Exhibits) constitutes the entire agreement by and among the Parties and there are no agreements or commitments by or among such Parties except as expressly set forth herein.[2]

Of particular significance is the procedure for terminating the management company. The Tri-Party Agreement provides that the term of the management agreement will automatically extend at the end of each contract year for one additional contract year unless either Patton or the Association notifies the other party of its intent not to extend at least ninety days prior to the commencement of the subsequent contract year.

In a letter dated July 31, 2013, the Association notified Patton that it intended to terminate the Management Agreement at the conclusion of its term in January 2015.[3]  The Association sent an additional notice of termination to Patton by letter dated August 15,

---

[1] An entity related to Patton and two entities related to ETC were also parties to the Tri-Party Agreement, but they are not pertinent to this appeal.

[2] The Affiliation Agreement was not included as an exhibit of the Tri-Party Agreement.

[3] This is more than ninety days prior to the commencement of the subsequent contract year as required by the Tri-Party Agreement.

2014. However, the Association did not notify ETC of Patton's termination.

This litigation commenced shortly thereafter with Patton suing the Association in December 2014. Patton claimed that the Association improperly terminated the Management Agreement, and it sued the Association for breach of contract, specific performance, promissory estoppel, and declaratory and injunctive relief. The dispute concerned whether the Association was required to notify ETC of Patton's termination. The Association filed an answer and counterclaim wherein it sought declaratory relief that the 2004 Affiliation Agreement had been superseded by the 2013 Tri-Party Agreement and that the contract with Patton has been properly terminated. The Association also sought an injunction requiring that Patton immediately cooperate and provide the Association with access to and control over its funds. ETC was not a party to the litigation.

In January 2015, the Association filed a motion for summary judgment arguing that it was entitled to declaratory and injunctive relief. The circuit court granted summary judgment in the Association's favor and found that, by granting the relief requested, all of Patton's claims against the Association were also effectively resolved in the Association's favor. An additional and pertinent portion of the order granting summary judgment is the circuit court's directive that "Patton shall immediately transfer and convey all of the Association's property unto the Association."

Following the entry of the order granting summary judgment, the Association petitioned the circuit court for an award of attorney's fees based on the ability to recover attorney's fees in breach-of-contract cases. Ark. Code Ann. § 16-22-308. Patton resisted this request, contending that this case was not primarily based in contract and that,

accordingly, attorney's fees were not authorized. The Association filed an additional motion with the circuit court asking that Patton be held in contempt for "failure to transfer and convey all of the Association's property unto the Association."

At the conclusion of a two-day hearing on these motions, the circuit court granted all of the relief requested by the Association. It awarded the Association $22,941.50 in attorney's fees and also found Patton in willful and malicious contempt of the court's February 2015 order. This timely appeal followed.

On appeal, we are tasked with determining whether (1) the circuit court erred by granting summary judgment in favor of the Association, (2) the circuit court abused its discretion by awarding attorney's fees to the Association, and (3) the circuit court erred in finding Patton in contempt of court.

## II.    *Summary Judgment*

In reviewing summary-judgment cases, we determine whether the circuit court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Nichols v. Farmers Ins. Co.*, 83 Ark. App. 324, 128 S.W.3d 1 (2003) (citing *Beaver v. John Q. Hammons Hotels, Inc.*, 81 Ark. App. 413, 102 S.W.3d 903 (2003)). The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* Summary judgment is not proper where although the actual facts are not in dispute, they may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Id.*

SLIP OPINION

(citing *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001)). Moreover, where the meaning of a contract does not depend on disputed extrinsic evidence, the construction and legal effect of the policy are questions of law. *Id.* (citing *Tunnel v. Progressive N. Ins. Co.*, 80 Ark. App. 215, 95 S.W.3d 1 (2003)).

First, we consider two procedural challenges raised by Patton that we may dispose of summarily. Patton contends that summary judgment was improper because ETC was not a party to this litigation and because discovery needed to be completed.

Patton raised the argument that ETC was an indispensable party to the circuit court. However, it failed to obtain a ruling on the issue. Failure to obtain a ruling on an issue constitutes waiver of the issue on appeal. *Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991). We summarily dispose of this point on appeal.

Additionally, Patton contends that summary judgment was inappropriate because discovery needed to be completed. Attached to Patton's response to the motion for summary judgment were affidavits presented in an attempt to demonstrate that there were facts in dispute regarding the parties' intent when the contracts at issue were executed. Outside evidence regarding intent is pertinent only when interpreting an ambiguous contract. *Hanners v. Giant Oil Co. of Ark. Inc.*, 373 Ark. 418, 284 S.W.3d 468 (2008). The interpretation of an unambiguous contract is a question of law, properly decided by summary judgment. *Roetzel v. Coleman*, 2010 Ark. App. 206, 374 S.W.3d 166. As we will discuss more fully below, we conclude that the circuit court correctly decided that only issues of law were present. Therefore, the circuit court did not err by refusing to allow

Patton to engage in discovery. Simply put, the intentions of the parties or circumstances surrounding the contracts were not relevant to the legal question facing the circuit court.

Turning to the substantive issues on summary judgment, we recognize that the crux of this case is whether the Association was required to notify ETC of its intent to terminate the management agreement with Patton. This depends on the meaning and applicability of certain contract provisions in the 2004 Affiliation Agreement and the 2013 Tri-Party Agreement. The 2004 Affiliation Agreement imposes this duty on the Association, but the 2013 Tri-Party Agreement includes no such requirement. The circuit court determined as a matter of law that the 2013 Tri-Party Agreement superseded the 2004 Affiliation Agreement and found that because the Tri-Party Agreement did not expressly require notice to ETC, ETC was no longer entitled to notice of termination of the management company.

Patton argues that the Affiliation Agreement was not superseded by the Tri-Party Agreement. In addressing this argument, we must review the two agreements. In reviewing contracts, the interpretation of an unambiguous contract is a question of law. *Tri-Eagle Enters. v. Regions Bank*, 2010 Ark. App. 64, 373 S.W.3d 399. The initial determination of an ambiguity rests with the circuit court, and if ambiguity exists, then the meaning of the term becomes a question of fact for the fact-finder. *Fort Smith Appliance & Serv. Co. v. Smith*, 218 Ark. 411, 236 S.W.2d 583 (1951).

In support of its argument, Patton references the merger clause found at paragraph 12(f) of the Tri-Party Agreement:

> This Agreement (including the Exhibits to this Agreement) supercedes any other agreement, whether written or oral, that may have been made or entered into by any party or any of their respective Affiliates . . . relating to the matters contemplated hereby. This Agreement (together with the

7

Exhibits) constitutes the entire agreement by and among the Parties and there are no agreements or commitments by or among such Parties except as expressly set forth herein.[4]

Patton claims that the two sentences of paragraph 12(f), when read together, indicate that the Affiliation Agreement was not superseded. Patton suggests that the first sentence of paragraph 12(f) was meant to apply retrospectively and that the Tri–Party Agreement only superseded any prior agreements relating to a matter "contemplated by this agreement." Patton continues to offer that the second sentence of paragraph 12(f) merely prospectively stated that it was the total agreement of the parties.

Taking Patton's interpretation as correct, the question then becomes whether the Affiliation Agreement's notification procedure for the management company's termination was "contemplated by" the Tri–Party Agreement. We hold that it was. The Tri–Party Agreement contemplated the protocol for the termination of the management company, and it does not require that ETC be notified. Further evidence that the Affiliation Agreement was contemplated by the parties to the Tri–Party Agreement is that Patton, the Association, and ETC were parties to both agreements and that the Tri–Party Agreement does not include the Affiliation Agreement as part of the agreement by making it an exhibit.

An additional argument raised by Patton is that the Tri–Party Agreement's merger clause was ineffective. Whether this merger clause is effective depends on whether the Affiliation Agreement and the Tri–Party Agreement covered the same subject. Merger happens only when the same parties to an earlier agreement later enter a written integrated

---

[4] The 2004 Affiliation Agreement was not included as an exhibit of the Tri-Party Agreement.

agreement covering the same subject. *Aceva Techs., LLC v. Tyson Foods, Inc.*, 2013 Ark. App. 495, 429 S.W.3d 355. Here, the 2004 Affiliation Agreement and the 2013 Tri-Party Agreement both provide for the procedures necessary to terminate a management agreement. It is clear that these agreements cover the same subject, and thus, we hold that the merger clause in the Tri-Party Agreement is effective.

Patton also advances an argument in support of the enforceability of the 2004 Affiliation Agreement based on the Restatement of the Law of Contracts, § 240. Section 240(1) provides generally that a written agreement "is not superseded or invalidated by a subsequent or contemporaneous integration . . . relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, *and* (a) is made for separate consideration, or (b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the contract." Restatement (First) of Contracts § 240(1) (1932) (emphasis added). Here, the Tri-Party Agreement was made for separate consideration and is such an agreement that might naturally be made as a separate agreement by the parties. Thus, the pertinent question becomes whether the Tri-Party Agreement is inconsistent with the Affiliation Agreement. These contracts are inconsistent in that they provide for differing ways to effectuate the termination of a management agreement.

We hold that the circuit court correctly determined that the 2013 Tri-Party Agreement supersedes the 2004 Affiliation Agreement. The Association was not required to provide notice of Patton's termination to ETC.

III. *Attorney's Fees*

We now direct our attention to the circuit court's award of attorney's fees to the Association. Following the entry of the order granting summary judgment, the Association petitioned the court for an award of $22,941.59 in attorney's fees pursuant to Arkansas Code Annotated section 16-22-308. The circuit court granted the petition and awarded the Association its full requested amount. Patton challenges this award, arguing that it was improper because (1) attorney's fees were not authorized because the breach–of–contract claim was not the primary basis for recovery, (2) the award included fees associated with Patton's claim against the Association's individual board members and that claim was not based on a breach of contract, and (3) the award gave fees for duplicative and unnecessary dual representation.

Our well-established rule relating to attorney's fees is that they are not allowed except when expressly provided by statute. *Hanners*, *supra*. Assuming fees are authorized by statute, a circuit court's decision to grant or deny attorney's fees, and in what amount, lies within the sound discretion of the court, and the appellate court will not reverse absent a showing of abuse of discretion. *Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006).

In determining whether the circuit court was authorized to award attorney's fees, we must examine whether Arkansas Code Annotated section 16-22-308 applied. Arkansas Code Annotated section 16–22–308 provides for the award of "a reasonable attorney's fee to the prevailing party in a breach-of-contract case." It is uncontroverted that attorney's fees are not recoverable for actions based in tort or for actions seeking injunctive relief. *See Wheeler Motor Co., Inc. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993); *see also Ark. Okla.*

*Gas Corp. v. Waelder Oil & Gas, Inc.*, 332 Ark. 548, 966 S.W.2d 259 (1998). However, where multiple claims are advanced—including a breach-of-contract claim—an attorney's fee award is proper when the action is primarily based in contract. *Barringer v. Hall*, 89 Ark. App. 293, 305, 202 S.W.3d 568, 576 (2005).

We acknowledge that the dismissal of this case was prompted by the Association's request for summary judgment on its claims for declaratory and injunctive relief. However, the grant of summary judgment on the Association's counterclaim also prompted the dismissal of the entire case, including Patton's claims for breach of contract, specific performance, and injunctive and declaratory relief against the Association. More importantly, the resolution of each of the claims advanced by Patton and the Association hinged on the interpretation of two contracts—the 2004 Affiliation Agreement and the 2013 Tri-Party Agreement. This action was clearly based primarily in contract, and accordingly, the circuit court was authorized to award a reasonable attorney's fee pursuant to Arkansas Code Annotated section 16-22-308.

Patton focuses its remaining arguments on the impropriety of the amount of fees awarded, contending that the award improperly included fees for duplicative and unnecessary dual representation and for work not based on breach-of-contract issues. When reviewing an order for attorney's fees, we are charged with determining only whether there has been an abuse of discretion. *Harris*, *supra*. In this case, the vast majority of the work was related to issues primarily based in contract, and it is certainly common and allowable for more than one lawyer to work on a case—especially a difficult one. We hold that the circuit court did not abuse its discretion in its award of attorney's fees and affirm on this

 

point.

## IV.    *Contempt*

As its final point on appeal, Patton claims that the circuit court erred in holding it in civil contempt for failure to comply with the order that it return all of the Association's property.[5]  In the order granting summary judgment, Patton was required to "immediately transfer and convey all of the Association's property unto the Association."   After the entry of the order, the Association filed a motion for contempt complaining that Patton had failed and refused to turn over bank account information and its tangible personal property.  Patton responded by asserting that it had relinquished the bank account information but that it had not relinquished the Association's tangible personal property because the circuit court's order did not contemplate the exchange of tangible personal property.

The circuit court scheduled a two-day hearing on this motion and the motion for attorney's fees.  At the conclusion of the first day of the hearing, the circuit court determined that the order was not ambiguous and found Patton in willful and malicious contempt.  That evening, a representative of Patton provided to the Association the property it requested. Ultimately, the circuit court entered an order for contempt that memorialized its contempt finding and imposed a sanction against Patton.

We first address whether ambiguity in the order granting summary judgment precluded the circuit court from holding Patton in contempt.  Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute

---

[5] The parties agree that the circuit court's contempt finding was one for civil contempt.

contempt. *Ivy v. Keith*, 351 Ark. 269, 279, 92 S.W.3d 671, 677 (2002). But before a party can be held in contempt for violating a court order, the order must be definite in its terms, clear as to what duty it imposes, and express in its commands. *Id.*

Patton advances three arguments in support of this proposition; it alleges that the circuit court's order (1) did not identify the property to be relinquished, (2) did not specify how to manage property jointly owned by Greens I and Greens II, and (3) did not impose a timeframe for compliance.

Patton contends that the requirement that *all* property be relinquished was ambiguous. Patton argues that it did not understand that it was required to relinquish items of tangible personal property. However, the plain language of the order requires the transfer of all personal property. For Patton to claim that it did not understand the meaning of the word "all" is implausible and strains credulity. This is especially apparent when confronted with the testimony that Patton did not relinquish items such as lawn equipment, vehicles, and keys that are necessary for the daily operations of a resort.

Patton also argues that the issue of jointly held property made the court's order ambiguous. Patton claimed that it did not turn over the property jointly owned by Greens I and Greens II because it was unclear how to effectuate this transfer. We are not persuaded by this argument. Regardless of the rights of Greens II to some items of property, the Association was entitled to all property in which it had an ownership interest. The Association's rights to its property were superior to those of Patton.

Patton also contends that the circuit court's directive that required Patton to "*immediately* transfer and convey all of the Association's property unto the Association" was

ambiguous.   (Emphasis added.) We disagree.   Again, the definition of the word "immediately" should have been apparent to an entity such as Patton accustomed to complicated, multiparty contracts.  The circuit court clearly wanted the property transfer to occur as quickly as possible, and the evidence indicates that Patton failed and refused to comply with this directive.

Accordingly, we hold Patton's arguments relating to ambiguity are without merit and conclude that the circuit court's order is definite in its terms and clear as to what duty it imposes.  *Id.*

Patton makes an additional argument that there is no evidence that it did not comply with the circuit court's order.  We reverse a circuit court's finding of civil contempt only when it is clearly against the preponderance of the evidence.[6]  Here, there is ample evidence to support the circuit court's finding of contempt.  After the entry of the order granting summary judgment, Patton continued to maintain control over many of the Association's tangible personal-property items.  To continue to exert control over items of tangible personal property after the entry of summary judgment begs the conclusion that the interference was malicious and willful, and the evidence reflects that court intervention was necessary to effectuate the return of the Association's property.  We affirm the circuit court's contempt finding against Patton.

---

[6] While the parties agree that the circuit court held Patton in civil contempt, we recognize that the contempt finding has some characteristics of criminal contempt.  Our standard of review of an order for criminal contempt is whether there is substantial evidence to support the finding.  *Conlee v. Conlee*, 370 Ark. 89, 97, 257 S.W.3d 543, 550 (2007).  Regardless of whether the circuit court's finding was for civil or criminal contempt, the evidence supports the contempt finding.

V.    *Conclusion*

Having considered the merits of Patton's appeal, we affirm the circuit court's orders granting summary judgment, awarding attorney's fees, and finding Patton in contempt.

Affirmed.

VAUGHT and HOOFMAN, JJ., agree.

*Gill Ragon Owen, P.A.*, by: *Matthew B. Finch* and *Heartsill H. Ragon III*; and *Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, LLC*, by: *Miles C. Thomas*, *pro hac vice*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Paul D. Morris*; and *Byars & Hall*, by: *Joe D. Byars, Jr.*, for appellees.